FRANCES ALLISON NOICE, complainant-respondent.

*v.*

HARRY J. SCHNELL and FRANK V. BALDWIN, executors and trustees under the will of William O. Allison, deceased, and the attorney-general of the State of New Jersey, defendants-appellants,

*v.*

CAROLINE A. ALLISON, JOHN ALLISON and KATHERINE MACLEAN, defendants-respondents.

[Argued February 4th, 1927.    Decided May 16th, 1927.]

1. W. O. A. by will disposed of his residuary estate as follows:

"I. It is my desire and intention to dispose by gift of a large part of my remaining estate for the purpose of pleasing Almighty God, benefiting my fellow-man, and as far as possible developing that section of the Palisades along the Hudson, located in the borough of Englewood Cliffs and vicinity."

\*        \*        \*        \*        \*        \*        \*

"XI. All the rest, residue and remainder of my property, real and personal, whatsoever and wheresoever situate not hereinbefore specifically bequeathed, I give and devise and bequeath unto my said trustees, in trust nevertheless, to maintain and develop in accordance with my known wishes, the Palisades along the Hudson, in the borough of Englewood Cliffs and vicinity. I am now formulating more definitely, plans for the development and maintenance of said Palisades, and to that end have requested two prominent residents of the city of Englewood to submit to me a plan for such development and maintenance. If such plan is submitted and receives my approval, then I direct my trustee to use this trust fund for the purpose of carrying out such plan. If, however, such plan does not receive my approval, then I order and direct my said trustees to use this trust fund for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them."

*Held*—(1) that this disposition of said residuary estate was for a charitable purpose; (2) that the same constitutes a valid, charitable trust.

2. A court's attitude in the consideration of a bequest intended for a charitable purpose should be in favor of the charity rather than

against it, and the bequest should be sustained as a charitable trust, if it can be done within the principles of law relating to such bequests.

3. If a donor's intention be charity, a court will execute the intention of the donor even though the donor may have indicated his purpose vaguely and in general language.

4. If a public gift be subject to a limitation which is not an essential part of the gift, the gift will not fail even though the limitation fails.

5. The terms of the bequest of W. O. A. examined, and *held*, to indicate, without looking outside of the portion of the will relating thereto, a general purpose to establish a charitable trust for the purposes mentioned in the will, sufficiently definite, and capable of enforcement and execution.

6. The case of *Smith* v. *Smith, 54 N. J. Eq. 1 (affirmed, 55 N. J. Eq. 821)*, distinguished.

7. Oral testimony necessary to place a court in the situation in which the testator was at the time of the execution of the will is admissible.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, whose opinion is reported in *99 N. J. Eq. 572.*

*Mr. Edward L. Katzenbach,* attorney-general, *pro se; Mr. Josiah Stryker* and *Mr. William M. Seufert,* for the appellants.

*Mr. John J. Treacy, Mr. John R. Hardin* and *Mr. Graham Sumner* (of New York), for the defendants-respondents.

*Messrs. Morrison, Lloyd & Morrison* and *Mr. Henry M. Brigham* (of New York), for the complainant-respondent.

The opinion of the court was delivered by

KATZENBACH, J.

On December 18th, 1924, William O. Allison, a resident of Englewood Cliffs, in the county of Bergen, died. He left a widow, Caroline A. Allison, and three children, John Allison, Katherine MacLean and Frances Allison Noice. On July 11th, 1924, Mr. Allison executed a last will and testament. It was duly probated in the prerogative court. The will made no provision for his wife and children. The reason for this omission is given in the tenth paragraph of the will.

It was that prior to the execution of the will he had made adequate provision for his wife and children by the conveyance of certain securities in trust for their use and benefit. This is admitted. The second paragraph of the will appoints Harry J. Schnell and Frank V. Baldwin executors and trustees thereof. The third paragraph directs the payment of the testator's debts and funeral expenses. From the fourth paragraph to the eighth (both inclusive) the will contains bequests aggregating $28,750. The ninth paragraph provides for the payment of an annuity of $300 per year. The twelfth paragraph gives to the executors and trustees power to sell real estate.

The first and eleventh paragraphs provide as follows:

"I. It is my desire and intention to dispose by gift of a large part of my remaining estate for the purpose of pleasing Almighty God, benefiting my fellow-man, and as far as possible developing that section of the Palisades along the Hudson, located in the borough of Englewood Cliffs and vicinity.

*     *     *     *     *     *     *     *

"XI. All the rest, residue and remainder of my property, real and personal, whatsoever and wheresoever situate not hereinbefore specifically bequeathed, I give and devise and bequeath unto my said trustees, in trust nevertheless, to maintain and develop in accordance with my known wishes, the Palisades along the Hudson, in the borough of Englewood Cliffs and vicinity. I am now formulating more definitely plans for the development and maintenance of said Palisades, and to that end have requested two prominent residents of the city of Englewood to submit to me a plan for such development and maintenance. If such plan is submitted and receives my approval, then I direct my trustees to use this trust fund for the purpose of carrying out such plan. If, however, such plan does not receive my approval, then I order and direct my said trustees to use this trust fund for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them."

Mr. Allison left an estate of $3,107,426.26. Of this amount $1,883,745.85 represented the value of the capital stock of the Allison Land Company, a corporation owning land principally on top of the Palisades. Mr. Allison owned all of the capital stock of this company.

On March 13th, 1925 (approximately three months after the death of Mr. Allison), his widow and children executed an agreement which recited that they claimed the provisions

of the will disposing of the residue of the estate were null and void; that they agreed to an equal division of the residuary estate between them, and requested the executors to divide the residue of the estate equally between them without waiting for the expiration of one year from the death of Mr. Allison. On February 9th, 1925 (less than two months after the death of her father, Mr. Allison), Frances Allison Noice (now Frances Allison Noice Schouten) filed a bill in the court of chancery praying that the provisions of the will with reference to the residuary estate be declared to be invalid. The complainant's mother, brother and sister, as well as the executors and trustees of the will, were made parties defendant.

To this bill the said Caroline A. Allison, John Allison and Katherine MacLean filed jointly an answer and counter-claim. Subsequently, the attorney-general was upon petition made a party defendant and filed an answer claiming that the devise and bequest mentioned was for a charitable use and valid. The executors and trustees filed a similar answer. The case was referred to a vice-chancellor for hearing.

The testimony taken at the hearing was brief. It was brought out that the two prominent residents of Englewood mentioned in the eleventh paragraph of the will as having been requested by the testator to submit to him a plan for the development of the Palisades were Messrs. Seward Prosser and Dwight Morrow. It was stipulated that neither ever submitted to Mr. Allison a plan. It also appeared that the testator said he had asked these gentlemen to make him a recommendation. Mr. Baldwin, one of the executors, stated that Mr. Allison had not imparted to him any plans which he desired to have executed. The other executor, Mr. Schnell, testified that he had long been associated in business with Mr. Allison; that Mr. Allison had spoken to him about having asked Messrs. Prosser and Morrow to submit a plan that would carry out his intention to give the major part of his estate for the benefit of the public; and that Mr. Allison had frequently spoken to him of his desire to give the bulk of his estate for the benefit of his fellow-man and for the improvement of that section (the Palisades) in which he had been

born, reared and spent his life. Mr. Schnell said that Mr. Allison had never expressed to him any plan which he desired his trustees to follow in effecting his desires in this matter.

The learned vice-chancellor in the opinion which he rendered held, first, that it did not appear that Mr. Allison intended to establish a charitable trust, and second, that the will required his trustees to follow a plan, not stated in the will, but which was to be disclosed to them, and that this plan was an essential part of the gift; that the gift was not intended to take effect unless the plan was revealed and followed. The vice-chancellor advised a decree which adjudged that Mr. Allison's disposition of his residuary estate was null and void and that his widow and children were the beneficial owners thereof. In the decree he directed that the residuary estate be equally divided between the widow and children of Mr. Allison, in accordance with the terms of the agreement mentioned, and conveyed to them by the executors.

From this decree the attorney-general, for the state, and the executors and trustees have appealed to this court. The appellants insist that the language of the first and eleventh paragraphs of the will establishes a trust which is a public charity; that the provision respecting the plan to be suggested by Messrs. Prosser and Morrow is inoperative because of the failure to formulate such plan, and that the last sentence of paragraph eleven provided for such a contingency, and directed the carrying out of the testator's wishes by the executors and trustees, if the plan was not formulated or if the plan did not meet with Mr. Allison's approval.

The questions which we consider presented by this appeal are two—*first,* is the disposition made by Mr. Allison of his residuary estate a gift for a charitable purpose? *Second,* if the gift be for a charitable purpose, is it void for indefiniteness?

Before approaching the consideration of whether or not the disposition made by Mr. Allison of his residuary estate constitutes a charitable trust there are some general rules as to the consideration of this class of cases to which it may be well to direct attention. The first is that a court's attitude in the consideration of a bequest intended for a charitable

purpose should be in favor of the charity rather than against it. The court should take a friendly, not a hostile, attitude toward the gift. It should be the aim of the court to execute the testator's intent by sustaining the trust, rather than to overthrow it, if it can be sustained without violating well-recognized and established principles of the law. No better statement of the attitude a court should assume in dealing with this question can be found than that given by Chief-Justice Beasley in the case of *Hesketh* v. *Murphy, 36 N. J. Eq. 304.* In this case he said:

"And it is to be remembered that it is the acknowledged doctrine that in all matters of construction courts are bound to lean in favor of charity rather than against it. And, indeed, so far has this legal favoritism been carried that it has been for ages the settled rule in the English law, and has been in this country often regarded as the true principle, that when a gift has been placed in the hands of a trustee to promote a charity, and which from the mutation of circumstances, had become incapable of fulfillment, such gift was to be applied by the courts, exercising a purely judicial authority, to some cognate object, on the ground that it was the presumed intention of the testator that the fund so set apart as a benefaction should not, in any event, return to his estate."

It should also be remembered that the court's approval of the object selected by the testator for his benefaction is not a factor to be taken into account in determining the validity or non-validity of the bequest. Doubtless, in many of the cases in which charitable trusts have been sustained, the members of the courts which have upheld the charity have entertained the belief that the objective of the donor was not well conceived, and that the use of the bequest for the purpose it was made will fail to attain the goal sought by the donor. It may not be amiss for this purpose and for reasons hereafter mentioned to show by reference to some cases the wide range of charitable trusts.

In the recent case of *Bloomer* v. *Bloomer et al., 98 N. J. Eq. 576;* affirmed, *134 Atl. Rep. 915,* a bequest directing

executors to devote the principal of a fund for the purpose
of assisting the worthy poor in Ireland was declared valid.
In this case not only the power to distribute the funds but
also the right on the part of the trustees to select the bene-
ficiaries was upheld.    In the case of *Hesketh* v. *Murphy,*
*supra,* a fund for the relief of the most deserving poor of the
city of Paterson was sustained.    In the case of *Goodell* v.
*Union Association, &c., of Burlington County, 29 N. J. Eq.*
*32,* a gift to a trustee "to the end that the interest be applied
in his discretion to alleviate the wants and suffering of the
deserving poor of Mount Holly," was held to be a charity
which would be protected and effectuated by our courts.    The
court of chancery, in *Hilliard* v. *Parker, 76 N. J. Eq. 447,*
sustained as a charitable bequest a fund of which the income
was to be expended by the executor to purchase fuel for the
most needy women in the borough of Woodstown, to be se-
lected by the executor, excluding women living with their
husbands.    In *Trustee* v. *Wilkinson, 36 N. J. Eq. 141;*
*affirmed, 38 N. J. Eq. 514,* a trust was created, the interest
of which was to be strictly applied and distributed to the
poor members of the Broadway and Fifth St. M. E. Churches
in the city of Camden.    This was held to be a valid charity.
In *While* v. *Newark, 89 N. J. Eq. 5,* the testator gave the
interest of $5,000 "to the fresh air fund of Newark, to be
used every summer for special, needy cases that need to be
sent right away, not to go in the general fund  *  *  *  the
money I give to the fresh air fund of Newark, N. J., to be
put out at interest if not already invested."    This bequest
was sustained.    In *New Jersey Title Guaranty and Trust*
*Co.* v. *Smith, 90 N. J. Eq. 386,* a bequest of $15,000 to erect
and maintain a building in Forked River to be used for the
benefit of the inhabitants thereof was sustained by the court
of chancery.    In *King* v. *Rockwell, 93 N. J. Eq. 46,* the
testator gave the residue of his estate to his executors in trust
to pay the same over to such charitable institutions, organiza-
tions or associations as said executors might deem worthy.
This bequest was sustained as a valid charitable bequest.    In
*George* v. *Braddock, 45 N. J. Eq. 757,* this court sustained
a trust for the distribution of publications of Henry George

on the land question and cognate subjects as a charitable trust. In *Jones* v. *Watford, 62 N. J. Eq. 339,* a bequest "for the purchase of books upon the philosophy of spiritualism, not sectarian, or of any creed, church or dogma, but of free, liberal bearing, said books to be placed by my executors where they can be free to all who desire to think for themselves and who are seeking for the truth from the true and living God," was upheld as a valid charitable bequest. In *Vineland Trust Co.* v. *Westendorf, 86 N. J. Eq. 343,* a trust was sustained for "the furtherance of the broadest interpretation of metaphysical thought." There are other cases in New Jersey, but these will suffice to show the wide range within which charitable bequests have been upheld. The decisions of other states, as well as of the English courts, are to the same effect. For the purpose of this case we think it unnecessary to refer to them.

There have been many definitions of a public charity given in the opinions in English and United States cases on this subject. They are in substantial accord because the common law of England and the law in this country is the same. From the wealth of decisions on this subject there are some outstanding cases which contain definitions of a public charity to which reference is frequently made. The definition of a public charity given by Horace Binney in his argument before the United States supreme court in the *Girard Will Case* and adopted by the court (*Vidal* v. *Girard, 43 U. S. 127; 11 L. Ed. 205*), is one of the most striking. It is as follows:

"Whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense—given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private or selfish."

In the able opinion in this court of the late Judge Green, in *MacKenzie* v. *Trustees of Presbytery of Jersey City, 67 N. J. Eq. 652,* he approves the definition given by the eminent Massachusetts jurist, Justice Horace Gray, in *Jackson* v. *Phillips et al., 96 Mass. 539,* which is as follows:

" 'A charity, in its legal sense, may be more fully defined as a gift to be applied, consistently with existing laws,

for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering of constraint; by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described as to show that it is charitable in its nature.' "

Of the text-writers, Perry gives a comprehensive definition of a charitable trust in these words:

"Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted, and all gifts for the public convenience, benefit, utility or ornament, in whatever manner the donors desire to have them applied." *2 Perry Trusts* *(5th ed.) 314.*

Of the shorter definitions Lord Camden's definition in *Jones* v. *Williams, Amb. 651,* is striking. He defines a charitable trust as, "A gift to the general public use which extends to the poor as well as to the rich."

Another condensed definition is that of Mr. Justice Swain in *Ould* v. *Washington Hospital, 95 U. S. 311,* which is given in these words: "A charitable use where neither law or public policy forbids may be applied to almost anything that tends to promote the well-doing and well-being of social man."

With these definitions in mind we will consider the conclusion reached by the learned vice-chancellor that the gift by Mr. Allison of his residuary estate is not a charitable trust. Upon this subject the vice-chancellor said:

"Nothing in the language of paragraph 11, by which the gift is made, describes a gift charitable in its nature. Paragraph 1 is in the nature of a preamble in which the testator endeavored to set forth the desire and intention which moved him in disposing of his estate in the manner afterward specified. He stated his motives as three-fold—*first,* to please Almighty God; *second,* to benefit his fellow-man; *third,* to assist in developing a portion of the Palisades. The first

two of these motives may have reference to his bequests to six friends and employes and may have no reference whatever to the Palisades, but all three, or perhaps only the first and third, or the third alone, may have been the moving cause for giving his residuary estate to the trustees. The desire to please God and the desire to develop the Palisades, taken separately or together, do no disclose an intention to make a gift for charitable purposes. For instance, the testator may have believed that his God created the Palisades and that it would please Him if he could, in some measure, protect their pristine grandeur from the hand of the vandal by developing and restricting their use to residential purposes only. If his desire to benefit his fellow-man and his desire to develop and maintain the Palisades should be read together, do they disclose a gift necessarily charitable? It will be remembered that the eleventh paragraph is silent as to the purpose or for whose benefit he desired the Palisades developed and maintained, and the first paragraph does not say that it was his desire to benefit his fellow-man by the development and maintenance of the Palisades, but, if such was his desire, it may have been his opinion that his fellow-man would be benefited by a plan or purpose which our courts would not consider charitable."

We are not in accord with the view thus expressed. We feel that paragraph 1 of the will is not in the nature of a preamble. A preamble is an introductory or explanatory statement. A preamble is not considered a part of a law, a resolution, or a document. It is an aid, it is true, in interpretating an ambiguity, if an ambiguity exists. It is resorted to to dispell an ambiguity but is not to be used for the purpose of creating a doubt or uncertainty which otherwise would not exist. *James* v. *Dubois, 16 N. J. Law 285.* Paragraph 1 is not framed as a preamble. It is as much a part of Mr. Allison's will as paragraph 11.

Paragraph 1 should, in our opinion, be construed with paragraph 11. In paragraph 1 Mr. Allison expressed it as his desire and intention to dispose by gift of a large part of his remaining estate for the purposes therein mentioned. His total estate exceeded $3,000,000. The legacies given by him

to his employes and friends totalled only $28,750. To this may be added the annuity of $25 per month mentioned in the ninth paragraph of the will. Legacies and an annuity for so small an amount as compared with the residuary estate could not reasonably be said to be a large part of his estate. When he referred to the disposition of a large part of his remaining estate for the purpose of pleasing Almighty God and benefiting his fellow-man, Mr. Allison could not have intended to refer to anything else, it seems to us, than to his residuary bequest. In the language of the vice-chancellor above quoted he omits reference in one place to one of the intentions of the testator referred to in paragraph 1, and that is his desire to benefit his fellow-man. It is important to remember this purpose when we consider that the vice-chancellor intimates that the testator may have intended to restrict the use of the Palisades for residential purposes. When the testator said that one of his purposes was to benefit his fellow-man he expressed a benefit which would be universal, not one which would be confined to a limited number of owners of lots in the Palisades section, restricted for residential purposes. The suggestion of the vice-chancellor that Mr. Allison may have intended to restrict the use of the Palisades for residential purposes implies the development of the Palisades for profit. There is nothing in the will to show that the testator had any such idea. The large part of his estate was, as he declared, to be devoted to a gift to please Almighty God and to benefit his fellow-man. This language affords no support for any other view than that the testator intended a free and untrammeled gift of his residuary estate for these purposes. He desired to maintain for the public at large the Palisades and to preserve for such public their natural beauty. It was not surprising that he had in mind such a purpose. He was born, reared, and lived his life in this vicinity. He had seen the Palisades desecrated for profit. He had seen the natural beauty of portions of the Palisades destroyed in order to obtain material for use in commercial enterprises. He deprecated this desecration. He wanted to dispose of his estate to please Almighty God and to benefit his fellow-man. These objects could not be at-

tained if profit was to enter into the plan. If profit had been in the mind of the testator it would seem as if he would have indicated in his will where the profits were to go. There is nothing in the will which refers to profits. The language of Judge Cardozo (now chief judge) in *Butterworth et al. v. Keeler et al., 219 N. Y. 446,* is appropriate in this connection. This language is as follows:

"If profit was the purpose the will would have told us to whom the profits were to go. The trustees are certainly not to use the surplus revenue for themselves. They are not to apply it to the use of other legatees, for the subject of the gift is half of the residuary estate, and no other legatees are named. The testatrix did not intend to die intestate and establish a trust for the benefit of her next of kin."

If we compare the purposes of the gift as expressed by the testator with the definition of a charitable trust given above we find the gift contains those elements which make it a charitable trust. It was avowedly given by the testator for the love of God and for the love of his neighbor in the catholic and universal sense, free from the taint of every consideration that is personal, private or selfish. It is a gift to be applied for the benefit of an indefinite number of persons, a gift to a general public use which extends to the poor as well as the rich, a gift for the public convenience, benefit and ornament, a gift that will tend to promote the well-doing and well-being of social man, a gift for a purpose which might well have been assumed by the United States, the State of New Jersey, or Englewood Cliffs, and paid for from the public treasury. The gift is an expression of Mr. Allison's faith in God and his handiwork, his love for the beauty of the Palisades, his fondness for the associations of his childhood and later life, his desire to benefit his fellow-men by enabling them to enjoy, as far as his means would permit, through the preservation and development of this section, the thing which had meant so much to him throughout his life. We think the gift valid as a public charity. We feel that this view is fully supported by the application of the facts of the present case to the definitions of a charitable

trust which have been quoted and the cases to which reference has been made.

Not only did the vice-chancellor hold that the bequest was not a valid public charity, but he also held that the disposition of the residuary estate was void for indefiniteness. We now come to the consideration of this question. At the threshold of the discussion of this phase of the case it should be remembered that the donors of public gifts have no special powers of divination. They cannot see the changes which time will bring. They cannot determine for all time the best methods for the development of the project for which the bequest is made. Charitable trusts are perpetual. It cannot be·expected that the donors will be able to indicate except in a general way the purpose they have in mind and the class to be benefited by the gift. ·Vagueness is to be found in almost every charitable trust. In *Attorney-General* v. *Haberdashers Co., 1 Myl. & K. 421,* the lord-chancellor said: "If the intention be charity the court will execute it however vaguely the donor may have indicated his purpose."

Upon the subject of indefiniteness the learned vice-chancellor said:

"It is settled in this state that if the trust sought to be established can be used for purposes not strictly charitable, or partly for purposes charitable and partly for purposes not strictly charitable, the trust is invalid. *Norris* v. *Thomson, 19 N. J. Eq. 307; affirmed, 20 N. J. Eq. 489; Van Syckle* v. *Johnson, 80 N. J. Eq. 117,* and cases last cited. The difficulty here is, first, that the will is indefinite and does not provide generally for the development and maintenance of the Palisades for the benefit of the testator's fellow-man and leave it to the trustees to devise the details for carrying out a general plan of public benefit, and, second, that it does provide for such development and maintenance within certain limitations, namely, according to a plan which the testator had in mind, concerning which he failed to disclose anything from which it can be determined that such plan was, or is, wholly charitable in its nature and therefore the gift must fail." *Norcross* v. *Murphy, 44 N. J. Eq. 522; Smith* v. *Smith, 54 N. J. Eq. 1; affirmed, 55 N. J. Eq. 821.*

Our examination of the will leads us to the view that the testator did provide generally for the development and maintenance of the Palisades in a definite locality. In this respect we differ with the vice-chancellor. It is true that in the will the details of the development and maintenance are not given. Unless the will indicates that the testator had in mind a plan which was not disclosed and which was an indispensable requisite to the execution of the public gift in the mind of the donor, the fact that no details are prescribed becomes immaterial, upon the principle of law respecting this class of cases which has just been referred to. In prior portion of the chancery opinion the court said:

"His plan, whether communicated to his trustees or not, was to form part of the purpose or object he had in mind. A plan was intended to be an essential part of the purpose of his gift."

This view is rested in part upon that portion of the eleventh paragraph of the will which says:

"I am now formulating more definitely plans for the development and maintenance of said Palisades and to that end have requested two prominent residents of the city of Englewood to submit to me a plan for such development and maintenance. If such plan is submitted and receives my approval, then I direct my trustees to use this trust fund for the purpose of carrying out such plan. If, however, such plan does not receive my approval, then I order and direct my said trustees to use this trust fund for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them."

We construe this portion of the will to mean that the testator was contemplating the formation of a plan and to that end had requested his friends to submit a plan. If it was submitted and approved then the bequest should be used in furtherance of this plan. If the plan did not receive his approval then the trust fund was to be used "for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them." This provided for the contingency of the approval of a plan. It also provided for the contingency of no plan being submitted and approved. If no plan was submitted and approved then the

testator provided for the use of the fund in the manner indicated in the concluding words of the paragraph. A convincing argument that the plan was not so essential that, unless formulated, the trust would fail is contained in the provision that if the plan should be submitted and should not receive the approval of Mr. Allison, then the trustees should use the fund for the development and maintenance of said Palisades section in accordance with his wishes as expressed to them. The principal case cited by the vice-chancellor to support his view that the failure to formulate the plan referred to defeats the trust is the case of *Smith* v. *Smith, 54 N. J. Eq. 1; affirmed, 55 N. J. Eq. 831.* If the present case is identical with the *Smith Case* as to the facts, then it should be decided as was the *Smith Case.* We think there is, however, a marked distinction between the two cases, and that the present case is easily distinguished from the *Smith Case.* Chancellor McGill said in the *Smith Case (54 N. J. Eq. 9)* : .

"Suppose a purpose to create a charity appears—not generally, but of a limited and special character—and the will fails to disclose the limitation, can this court, in defiance of the plain requirement of the statute that the will shall be in writing, add to it verbal expressions of the testator which will supply and define the limitation? And is the case made stronger by the testator's direction that the reference shall be had to these expressions?"

We concede that if a gift is made subject to a clear limitation with the intention that the limitation is of the substance of the gift so that neither can take effect without the other, the gift must fail if the character of the limitation is not disclosed in the will. The court so held in the *Smith Case.* Does this holding apply to the present case? To determine this question in the present case two questions must be answered—*first,* was the gift of Mr. Allison for the maintenance and development of the Palisades subject to a limitation which was such an essential part of the gift that if the limitation failed the gift must likewise fail? *Second,* was the limitation, if such existed, not disclosed in the will, but discoverable only by reference to the oral expressions of the testator?

With regard to the first question it should be borne in mind that in the *Smith Case* the court did not regard the testator's reference to the plans which he had orally disclosed to his trustees as necessarily decisive of the question. The court examined the whole will for the purpose of determining:

"Whether the intention of the testator was to qualify the character of the school by a restrictive scheme so that unless it should be established in compliance with such restriction, it should not exist at all, or whether it was his broad purpose to create a school for apprentices and young mechanics, even though the plans he wished to prescribe for its control should not be perfected or exist."

It will be noted from the will which is set forth in the opinion that the testator bequeathed his property to a board of nine trustees; that he provided how vacancies occurring by resignation or death should be filled; that he appointed the president of the board, provided for his salary and for the election of his successor; that he also provided that the president should give sufficient time to carry out the objects of the will; that the president should receive his authority from a two-thirds majority of the board; that a sale or purchase of the property or expenditure of money should be done only with the assent of a two-thirds majority; and then provided as follows:

"I desire that my entire estate with its accumulations shall be used in establishing and conducting a school for apprentices and young mechanics on plans to be hereafter described by me; or in case of my death before perfecting said plans, the school above named is to be conducted on plans which I have from time to time described to most of the board of trustees herein named and who shall approve of final practical plans in keeping therewith."

The decision of Chancellor McGill (affirmed by this court) that the testator did not intend to make the gift or to establish the school except in accordance with his restrictive scheme was based upon the disposition shown by the testator in his will to control details. This is apparent from the language of the following paragraph of Chancellor McGill's opinion:

"It is impossible to read that instrument without being impressed that the testator intended to prescribe the precise character of the school he meant to found. His disposition to control details is evinced in the particularity of the provisions he makes for a perpetual board of trustees, for the first president of that body and succession to that office, for the compensation of the president and his duties and powers, and for restrictions upon the action of the board of trustees. It is after the exhibition of this disposition that the object of the trust is stated to be the establishment of a school on plans which he should thereafter perfectly describe, or had theretofore imperfectly described. It was to be a school on his plans. The trustees, so far as plans for the school were concerned, were limited in the exercise of their discretion to the approval of practical plans which should accord with the imperfect plans or scheme for a school which he had disclosed to them. He did not mean that they should originate plans —the ideas were to be his—they were merely to execute them.

"It appears to me to be plain that though his plans or schemes were intended to have reference largely to matters of administrative details, they were nevertheless meant by him to be an essential limitation of his gift."

In the *Smith Case* the will was construed as though the testator had specifically provided that the school should not be established or conducted except in accordance with his plans. The plans were not contained in the will. For this reason the trust failed. It is significant that the object of the trust was stated in the will after the testator's disposition to control details had been fully exhibited. It is equally significant that the testator stated that the school should be conducted on his plans, which, in view of his disposition to control details, did not mean his general purpose, but a method or arrangement or scheme which he should outline for the school.

In the present case the will of Mr. Allison commences with a statement of his general intention. He states this in the first paragraph. In no part of the will does Mr. Allison disclose any intention to control details. The will does not anywhere mention a plan or scheme or method of procedure

except in connection with the testator's request to Messrs. Morrow and Prosser to submit a plan to him, and since this plan was never submitted this portion of the will by its very language is ineffective and serves no purpose except as it affords light for the consideration of the remainder of the will.

While the question whether Mr. Allison intended his gift to take effect if his plan should fail must be determined from the language of the will, yet the language of the will may be construed in the light of the circumstances surrounding the testator at the time the will was made.

In the *Smith Case* the testator had plans for his school which had not yet been perfected, but which had in part been expressed to his trustees. In the present case Mr. Allison had no plan. He doubted his ability to evolve a plan. He had called in outside aid. The gentlemen, however, who had been requested to submit a plan had failed to do so and he naturally doubted whether such a plan would be submitted during his lifetime. He, undoubtedly, contemplated the failure of the broad purpose expressed in the first paragraph of his will if this should occur, and in order to avoid such a failure he provided that if this plan should not be perfected his trustees should use the trust fund for the development and maintenance of the Palisades section in the manner provided in the concluding portion of paragraph 11.

It is significant that when the testator referred to a method or procedure or a scheme he used the word "plan," but when he referred to his general purpose he used the words "desire" and "wishes." This was an accurate use of language. Webster defines the word "plan" as "a method of action, procedure or arrangement; a scheme." The word "desire" is defined as "an expressed wish." "Wish" is defined by the same authority as "eager desire; longing; expression of desire; a thing desired; an object of desire."

The view that Mr. Allison in referring to his wishes intended to refer to the desire expressed in the first paragraph of the will is supported not only by the definitions of the words used and by the testator's discrimination in the use of the word "wish" and the word "plan," but also by the fact

that in the first sentence of the eleventh paragraph of his will he speaks of maintaining and developing the Palisades in accordance with his "known wishes." This could mean nothing but his general purpose, for at that time he had no plan or method, and obviously a plan or method which had not yet come into existence could not be known. He had, however, the desire expressed in the first paragraph of his will which was his known wish with regard to the disposition of his estate.

The distinguishing feature between the *Smith Case* and the present case is the difference between the two wills. The provisions of the Smith will upon which the court based its decision that the testator's gift was restricted by his own undisclosed plan are absent from the will of Mr. Allison. The Allison will shows that the testator had the broad general purpose which the court found lacking in the Smith will.

For these reasons we find that the gift of Mr. Allison was not limited by any plan or method or limitation not disclosed in the will.

This brings us to the consideration of the second question : Was the limitation, if such existed, not disclosed in the will, but discoverable only by reference to the oral expressions of the testator? In the *Smith Case* it was decided that the testator did not intend that the school should be established or conducted except in accordance with his plans. It was also clear that the plans were not disclosed in the will. In the present case Mr. Allison had no plans and there is nothing in his will which indicates that he intended that his gift should not take effect except in accordance with plans formulated by him. It is contended by the respondents that when Mr. Allison provided that his trustees should use the fund for the maintenance and development of the Palisades, "in accordance with my wishes as expressed to them," that this is in effect the same provision as contained in the Smith will that the school should be conducted "on plans which I have from time to time described to most of the board of trustees." The fallacy of this contention is that the limitation in the *Smith Case* was preceded by detailed provisions which showed a disposition on the part of Smith to control details which

are not present in the instant case, and that Smith had plans which he had expressed to his trustees and which he required should be followed. Mr. Allison had no plan or method or scheme and had expressed none to his trustees. He, however, had wishes which he had expressed in the first paragraph of his will. The limitation imposed on the discretion of the trustees by Mr. Allison's reference to his wishes was the limitation that the trust fund should be used for the maintenance and development of the Palisades along the Hudson, in the borough of Englewood Cliffs and vicinity, for the purpose of pleasing Almighty God and benefiting his fellow-man. This was what Mr. Allison stated in the first paragraph of his will was his "desire" or "expressed wish." This was his general purpose. The limitation imposed by him on the trustees was not a limitation as to method or plan of procedure, but the limitation that the Palisades should be maintained and developed in accordance with the wish expressed in the first paragraph of his will.

We are not therefore obliged, as the court was in the *Smith Case,* to look outside the will for the testator's wishes. The wishes are expressed in the will. We have, therefore, the situation where the testator in the first paragraph of the will expressed his wishes using the word "desire," which, as has been stated, means "an expressed wish," and in the eleventh paragraph of the will he refers to those wishes as "well known wishes" and as "expressed wishes." The "desire" expressed in the first paragraph is identical with the "wishes" referred to in the eleventh paragraph.

An analysis of the *Smith Case* fails to make it an authority in favor of the respondents' contention. All this court held in the *Smith Case* was that where a testator makes a gift for a particular purpose, but provides that the purpose can only be accomplished by following a particular method, evidence outside the will cannot be received for the purpose of disclosing the method, and the gift, therefore, must fail, since it was the testator's intention that if the method could not be carried out the gift should not be made. In the present case Mr. Allison expressed his wishes in the first paragraph of his

will and required his executors to expend the residue of his estate in accordance with those wishes.

This completes the views of the court upon the second of the two questions presented by these appeals for our consideration and disposition. We deem the disposition of his residuary estate made by Mr. Allison to be a valid, charitable trust, sufficiently definite for enforcement and execution in accordance with the wishes of Mr. Allison as expressed generally in his will through the trustees appointed by him who are vested with a discretion to devise the method and ways for the accomplishment of the testator's purpose.

There is one further, but incidental, question to be considered. This is with reference to the oral testimony which was offered on the part of the trustees and declared in the opinion of the vice-chancellor to be inadmissible. While the testimony is not essential to reach the conclusions we have upon the fundamental questions involved in this case, we deem it advisable to say that this question has been considered and the conclusion reached that the testimony was admissible. Its purpose was to place the court in the situation in which the testator was at the time he executed the will. This principle is well stated in the article of Vice-Chancellor Wigram on *Extrinsic Evidence in the Aid of Interpretation of Wills* (page 142), where he says:

"For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will."

This principle has been followed in this state in the following cases: *German Pioneer Verein* v. *Meyer, 70 N. J. Eq. 192; affirmed, 72 N. J. Eq. 954; De Camp* v. *Dobbins, 29 N. J. Eq. 37; affirmed, 31 N. J. Eq. 670; Attorney-*

*General* v. *Moore's Executors,* 19 *N. J. Eq.* 503; *State* v. *Ready,* 78 *N. J. Law* 599.

The decree of the court of chancery, excepting the portion thereof relating to the allowance of counsel fees, is reversed. The case is remitted to the court for the purpose of entering a decree in conformity with this opinion dismissing the bill of complaint.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 12.