In the Matter of the Judicial Settlement of the Account of Proceedings of the FIFTH AVENUE BANK OF NEW YORK and Others, as Executors, etc., of KATHERINE BERKAN JUDD, Deceased, Respondents.*

THE ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Appellant.

First Department, November 9, 1934.

*Robert P. Beyer, Assistant Attorney-General*, of counsel [*Henry Epstein, Solicitor-General*, with him on the brief; *John J. Bennett, Jr., Attorney-General*], for the appellant.

*Thomas L. Walsh* of counsel [*Norwood & Walsh*, attorneys], for the respondents.

UNTERMYER, J. By the fourth paragraph of her last will and testament Katherine Berkan Judd provided: " I give and bequeath to the Johns Hopkins Hospital of Baltimore, Maryland, the sum of Thirty thousand ($30,000.00) Dollars, to be known as the ' Katherine Berkan Judd Cancer Fund,' upon the trust nevertheless to invest and keep the same invested and out of the net income thereof to pay each year the sum of one thousand dollars to the person who, in the judgment of the trustees or other managers of said hospital, shall have made the greatest advancement toward the discovery of a cure for cancer. The balance of said net income shall be paid to said Johns Hopkins Hospital of Baltimore, Maryland, to be used for the relief and comfort of poor patients suffering from

---
* Revg. 151 Misc. 857.

cancer. Upon proof satisfactory to the trustees or other managers of said hospital that a cure for cancer has been discovered and perfected, then I direct that the principal of this fund shall be distributed one-half (1/2) to the said Johns Hopkins Hospital, to be used by them in any research work and for the relief of poor patients suffering from cancer, and the other half to be distributed by the trustee to such person or persons as shall have discovered and perfected said cure for cancer."

The board of trustees of Johns Hopkins Hospital have declined appointment as trustees because of the difficulties attending administration of the fund. This, however, would present no obstacle in effectuating the purposes of the testatrix by means of the appointment of a substituted trustee, provided always the benefaction which she has attempted to create is valid as a charitable trust.

The surrogate has held the trust to be invalid because it provides for payments to persons who shall have made the greatest advancement in the discovery of, or who shall eventually have discovered, a cure for cancer. These provisions, in the opinion of the surrogate, invalidate the trust " because by its terms it provides plainly for a gift to an individual or individuals for his or their own use." If this be the correct view then many of the most useful benefactions of modern times are not to be classified as charitable.

We think this conclusion proceeds upon too restricted a conception of a charitable use. In reaching it the surrogate considered only the immediate destination of the funds and disregarded what seems to us the dominant purpose and the wider implications of the trust. If the purpose of the trust were merely to benefit research workers in cancer it would not be saved by reason of the useful nature of their work. (*Matter of Beekman*, 232 N. Y. 365; *Matter of Kennedy*, 240 App. Div. 20; affd., 264 N. Y. 691.) But this involves, we are convinced, a misconception of its purpose. That purpose is the encouragement of research in the field of cancer by rewarding those who shall have been most useful in the investigation of a subject which has baffled the medical profession. It is not to be supposed that it was the intention to enrich the unidentified individuals who might happen to be successful in this research work, except as this was incidental to the achievement of a purpose to benefit mankind. The real beneficiaries are those afflicted who are expected to benefit by the research which may be stimulated by the hope of pecuniary reward. The trust is not invalid merely because it contemplates payments to individuals for their private use. That situation exists in any charitable trust which requires for the discharge of its functions the employment of compensated employees. They, too, receive emoluments " for his or their own

use." Yet it will not be contended that such charities are created in order to compensate their employees. They are created, as was the trust here, to secure the advantage of their services in effectuating the objects of the charity. Wherever the question seems to have arisen it has been decided in this way. (*Thompson* v. *Thompson*, 1 Coll. 381; 63 Eng. Rep. 464; *Almy* v. *Jones*, 17 R. I. 265; *Palmer* v. *Union Bank*, Id. 627; *Coleman* v. *O'Leary's Executor*, 114 Ky. 388; *Heald* v. *Johnson*, 204 Iowa, 1067.)

This conclusion is not hostile to any of the decisions relied on by the surrogate. In *Matter of Frasch* (245 N. Y. 174) a trust created " for the purpose of establishing a fund for chemical research " in the field of agricultural chemistry was held to be a charitable use. It seems to us that a trust intended to reward successful endeavor in the field of medical research is equally charitable if its purpose be the universal advantage of mankind. *Matter of Shattuck* (193 N. Y. 446) is not applicable here. The trust in that case left the trustees free to apply the income to educational institutions organized for private profit. Such institutions might not have applied the gift at all to the cause of education but have made a distribution of it by way of dividend. " If the trust had been for the advancement of education, and nothing more, a different conclusion might have followed." (*Butterworth* v. *Keeler*, 219 N. Y. 446.) *Matter of DeForest* (147 Misc. 82) is distinguishable upon similar principles, for there also the income of the trust fund was directed to be paid to a business corporation operated for the private enjoyment of a country club of restricted membership. Here we find nothing of the kind, but only the expression of a purpose which, within the settled definition of the term, is charitable. (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Matter of MacDowell*, 217 id. 454; *Hamburger* v. *Cornell University*, 240 id. 328.)

The decree should be reversed, so far as appealed from, with costs to the appellant payable out of the fund, and the matter remitted to the surrogate of the county of New York for further action in accordance with this opinion.

FINCH, P. J., MERRELL, TOWNLEY and GLENNON, JJ., concur.

Decree, so far as appealed from, reversed, with costs to the appellant payable out of the fund, and proceeding remitted to the surrogate of the county of New York for further action in accordance with opinion.