Complainants are a brother and nephew of the late Thomas G. Sheen, who died testate. They seek a construction of decedent's *Page 133 
will, so that a trust therein created may be declared void, resulting in intestacy as to the trust fund, and that the residuary estate pass in accordance with the terms of a certain agreement made between the complainants and decedent's widow, rather than in accordance with the intestate laws of New Jersey.
The widow, a sister, the executors and trustees of decedent's estate, and the attorney-general are defendants, all of whom have answered, with the exception of the attorney-general, against whom a decree pro confesso has been taken.
The fourth paragraph of the will gives rise to the present litigation:
"Fourth: I give and devise all the rest of my real and personal estate, of what nature or kind soever, to ELIZABETH SHEEN and GUARANTEE TRUST COMPANY OF ATLANTIC CITY, NEW JERSEY, my Executors and Trustees hereinafter appointed, in trust, with power to sell and dispose of the same at public or private sale, at such times and upon such terms and in such manner as to them shall seem proper to be held in trust for the following purposes:
(1) To pay out of the income thereof the sum of Twenty-five ($25.00) Dollars a week to each of the following named persons during their lifetime, viz.: ELIZABETH SHEEN, my sister, JAMES M. SHEEN, my brother, and ALVORD SHEEN, my nephew.
If there should not be sufficient income to pay Twenty-five ($25.00) Dollars a week to each of the above, I then direct my said Trustees to pay to Elizabeth Sheen, first, the sum of Twenty-five ($25.00) Dollars a week, and the balance of any income up to the sum of Twenty-five ($25.00) Dollars each, shall be equally divided between my said brother and nephew. Any income in excess of the Seventy-five ($75.00) Dollars a week shall be added to the principal of the Trust.
(2) At such time as the said Elizabeth Sheen, James M. Sheen and Alvord Sheen have all died and the bequests have ceased, I then direct my surviving Trustee, its Successors, to establish a Trust Fund, the income of which is to be used annually for the purpose of awarding a prize to the outstanding Doctor of Medical Science in the United States for each year. My said Trustee is to award the prize to such Doctor as it may select; said Trustee shall have full power to make investigations and to obtain information from any Medical Societies in the United States, and may use such other means as it may deem proper for the purpose of selecting the person to whom such annual Award shall be given. The Trustee shall have the right to publicize the Award as it may deem necessary and proper and the award is to be known as the `Dr. Rodman E. Sheen and Thomas G. Sheen Award.' *Page 134 
My purpose in creating this Award is to further the study of medicine and the Science of medicine and is to compensate the Doctor or Doctors who have each year done something outstanding in the medical profession;"
It seems to be agreed that the provisions of subsection 1, relative to the weekly payments of $25, are separate and distinct from the provisions of subsection 2 of said paragraph.
It is contended that the provisions of subsection 2 of the paragraph relating to the establishment of a trust fund by making an annual award of a prize to a doctor are invalid and void because the trust attempted to be set up is not charitable.
The situation confronting the testator at the time of the making of the will was that he had been predeceased by a brother, Dr. Rodman E. Sheen, who had been for a long time afflicted with an incurable disease, and the testator, during the lifetime of his brother, had bent his every effort in an attempt to cure the young doctor and had spent large sums of money in that effort, consulting with outstanding medical men in this country and abroad. It is this testator, whose ambition to find a cure for the malady with which his brother had been afflicted was thwarted and whose will we are considering, and the court must put itself, as nearly as it may, in testator's position, i.e., have before it his frame of mind at the time he drew the will.
The court starts out with an attitude in favor of the attempt to create a charitable trust rather than a hostile attitude toward the gift.
It is probably true that if the court were to construe an attempt to create charitable trusts in other than a friendly manner, few would survive, but fortunately, the rules of construction are otherwise, with the result that the benefits attempted to be secured by charitable trusts have been assured rather than defeated.
The case of Noice v. Schnell, 101 N.J. Eq. 252 (at p.257); 137 Atl. Rep. 582, states the rule as laid down by the court of errors and appeals, as follows:
"A court's attitude in the consideration of a bequest intended for a charitable purpose should be in favor of the *Page 135 
charity rather than against it. The court should take a friendly, not a hostile, attitude toward the gift. It should be the aim of the court to execute the testator's intent by sustaining the trust, rather than to overthrow it, if it can be sustained without violating well recognized and established principles of the law."
The court in the above case then cites, with approval,Hesketh v. Murphy, 36 N.J. Eq. 304, and proceeds with a citation of numerous cases in which the courts of this state have upheld charitable trusts.
It has been held in this state that the intention of the donor is of great importance in determining the character of the trust.DeCamp v. Dobbins, 29 N.J. Eq. 36 (at p. 47), and it is also the law that it is immaterial whether the gift is called charitable in the will itself (McKenzie v. Trustees ofPresbytery of Jersey City, 67 N.J. Eq. 652 (at p. 665);61 Atl. Rep. 1027), the real question being the effect and result of the trust. 2 Bogert 1110 § 364, says:
"that most courts consider only the effect of a particular trust in deciding whether it is charitable or not. The question is not what the testator desired to accomplish by the trust, but what in the opinion of the court will be the result of the trust upon the community and society in general. The settlor may have founded the trust solely to satisfy his family pride, for self-glorification, in order to emulate and rival a neighbor's bounty, to improve living conditions in his home city and thus strengthen his own business interests, or for other reasons unconnected with social advancement in the region in question. The court should not be interested in these incidental psychic or even material advantages to the settlor or his family. The court should, and generally does, direct its attention merely to the question whether the net result of the trust in operation will be to advance the religious, educational, eleemosynary, governmental, or other charitable interests of the community and thus to produce the social advantage required for the charitable trust."
After the above quotation, the author cites In re Delaney,L.J. 71 Ch. 811, 814:
"Charity is necessarily altruistic, and involves the idea of aid or benefit to others; but, given the latter, the motive impelling it is immaterial." *Page 136 
It is unquestioned that a gift in trust for the promotion of health and preservation, cure and treatment of disease is charitable, as that word is legally defined, and citations in support are unnecessary. See 11 Restatement of the Law of Trusts1151 § 372; 10 American Jurisprudence 635 § 71. But it is argued that the prize or award in the case at bar is for the benefit of one person in each year who fills the role demanded by the terms of the trust, and is therefore void in that it is not sufficiently wide to make the trust charitable, and further, that the donor says the prize or award is to "compensate" the doctor who has done something outstanding; that to compensate means to pay the outstanding doctor for services rendered, an idea incompatible with a charitable gift; that the result is that testator's purpose was not merely to benefit the public by furthering the medical sciences, but also to confer a peculiar, private benefit upon the individual who brings himself within the category of those to be compensated.
There may be no question, it seems to me, that testator's intent and desire was to create a trust to promote the study and science of medicine, so that the public and society could have the benefit of the result thereof, and the hope that the giving of the annual prize or award would stimulate that study and research, but the question is, did he legally accomplish his purpose?
Mere definitions do not suffice to answer the question. Many of them are to be found in Noice v. Schnell, supra.
An analysis of the gift is necessary. First, the income to be used annually for the purpose of awarding a prize to the outstanding doctor of medical science in the United States, second, trustee to select the doctor, with full power of investigation in aid of his decision, third, declared purpose "to further the study of medicine and the science of medicine," fourth, to compensate the doctor or doctors "who have done something outstanding in the medical profession."
The benefits of the award are of a two-fold nature, first, to the outstanding doctor, a sum of money as a prize or award, and secondly, an indefinite number of persons in the United States,i.e., the general public, who must necessarily receive *Page 137 
the benefits of the development of the science of medicine attained through the study and research of members of the medical profession, not only the doctor who gets paid in part for his services, but other doctors who make research and are not fortunate enough to receive the award. The real benefits to the public and the benefits intended to be secured by the trust are the results of the study and research of the doctors of the United States, as those results are handed down to the medical profession and by them to their patients.
It is impossible that a doctor could be classified as the outstanding doctor of medical science in the United States and be recognized as such by the trustees, unless the result of his study and research in medical science had been made known to the medical profession by an announcement of the results of such study and research. The results of research and study on the part of the medical profession, some no doubt impelled by the hope of reward, must tend to the promotion of health, the prevention, cure and treatment of disease. One doctor gets paid.
2 Bogert 1163 § 373, says:
"Trusts for the maintenance of existing health and the prevention of disease are clearly charitable, and are probably to be classed as eleemosynary. The social benefit from the prevention of suffering and physical incapacity is of the same type as that accruing from the relief of existing pain and indisposition, and would seem of equal importance. Trusts to advance medical knowledge have both an eleemosynary and an educational aspect."
Does the fact that the trust provides for a prize or award to the doctor invalidate an otherwise valid charitable trust? I think not. In 14 C.J.S. 447, it is stated:
"A bequest of a fund for the giving of prizes and medals for educational, medical, or literary work, or other deeds beneficial to the general public, is a valid charitable gift."
2 Bogert 1168 § 374, says:
"Trusts to establish scholarships for the purposes of paying the tuition and other expenses of students while receiving instruction, trusts to lend money to students, * * * or to establish prizes and other awards for excellence in literary or scientific work" are valid charitable trusts. *Page 138 
Certainly a trust for the purpose of awarding prizes in these branches of social science cannot be justified to the exclusion of such an award for excellence in medical science. The public is the ultimate recipient of the great benefit intended to be secured by the trust. The doctor is merely the medium through whom that benefit is secured. He has been rewarded for his services, not paid therefor. The amount of good that probably will result to the public could not be measured in dollars and the mere fact that the donor used the word "compensate" does not alter this. The charitable benefits of the trust reach the public in perpetuity, at a cost to the trust of the income but not the principal, and as said by 2 Bogert 1115 § 365, "there is no doctrine that the charitable benefits must reach the public free of all cost."
Recent cases in New York, where the trust income was devoted to the giving of prizes or awards, are: In re Browning's Estate, 1N YS. 2d 202; 165 Misc. 554; In re Dazian's Estate, 3N YS. 2d 742; 167 Misc. 151, and In re Judd's Estate,274 N.Y.S. 902; 242 App. Div. 389; affirmed by New York court of appeals, 200 N.E. Rep. 297.
In the Browning Case, the residue of the estate was given to trustees, the annual income to be divided into six equal shares, each share to be devoted in each year as a prize for the best results achieved during each year in the six classes specified, and to be paid to such man or woman throughout the world who qualified to receive the award in each class. One of the classes was "the most widely beneficial discovery or new method in medicine, surgery or in the prevention of disease."
In the Dazian Case the gift was to a foundation to be created for medical research and to create a fellowship for education in medical science.
In the Judd Case the provision was that the trustees were to pay each year the sum of $1,000 "to the person who, in the judgment of the trustees, shall have made the greatest advancement toward the discovery of a cure for cancer." The court in this case held:
"It is not to be supposed that it was the intention to enrich the unidentified individuals who might happen to be successful *Page 139 
in their research work, except as this was incidental to the achievement of a purpose to benefit mankind."
But complainants say it is true that the trust, in so far as it purports to advance the science of the study of medicine, is good, but still the funds are to be used for a purpose not strictly charitable, i.e., to compensate the doctor.
I agree with the proposition that a gift partly charitable and partly not may not stand. Kitchen v. Pitney, 94 N.J. Eq. 485
(at p. 487); 119 Atl. Rep. 675, wherein Vice-Chancellor Fielder cites cases. But looking at the result of the gift, we find that the charitable end to be attained is the advancement of the science and study of medicine and that the chosen doctor is only the means through whom that end is obtained. It is not a gift to the doctor with a consequential charity arising from the gift, as was the case of Attorney-General v. Haberdasher'sCo., 1 Myl. K. 420. In that case the purpose of the gift was primarily to lighten the burden of the company with respect to furnishing grain to poor people at reasonable prices by stabilizing prices, but the poor people would have received the grain at reasonable prices by virtue of a compulsory law, even had the donor not attempted to establish the trust, and the court held:
"A gift to a person for his own benefit, whereby consequential charity may arise, is not a charitable use."
As heretofore noted, in the case at bar the primary purpose of the gift is the advancement of medical study and science, with its resultant benefit to the public, which it might well not get if the study of medical science was allowed to stagnate. The primary purpose was to stimulate the advancement of that science with a reward, not to all doctors who contributed to its advancement, but to the outstanding doctor, who merely gets a prize for his contribution to the advancement.
In Attorney-General v. Whorwood, 1 Ves. Sen. 535, the court held that the gift was to the "fellow" and not to the poor, but in the instant case the gift is of the corpus to the trustees, in order that mankind may profit by the study and research of medicine. The public gets the real benefit. *Page 140 
Of course, charitable benefits of any gift are consequent upon the gift, but if the gift is essentially for a charitable purpose, the mere fact that a prize or award is given to the instrumentality through whom the benefit flows to an indefinite number of people required for the charitable gift, does not invalidate the gift. It is only when or where the gift is for a non-charitable purpose and consequential charitable results that the gift is void. In the case of Attorney-General v.Haberdasher's Co., supra, the gift was to the company, to help it. In Attorney-General v. Whorwood, supra, the gift was to the fellow and for his purpose and benefit. In each of these cases some consequential benefits may have inured to others but under the principle stated, the gift was mixed, i.e., charitable and non-charitable, which was void.
It is also argued that the gift is so vague that the award may be to a doctor outstanding because he is the fattest, the leanest or the meanest in the profession. As said in the HaberdasherCase, supra:
"If the intention be charity, the court will execute it, however vaguely the donor may have indicated his purpose," cited in Noice v. Schnell, supra (at p. 264), prefaced by "vagueness is to be found in almost every charitable trust." So here, the mere fact that testator's designation of the recipient of the annual award may be vague, yet it is clear that the award or prize may not be given by the trustees excepting that the recipient has done something outstanding "in the medical profession" which, in the opinion of the trustees, has furthered the study and science of medicine.
The court holds that the trust in question is a valid charitable trust, thus rendering it unnecessary to determine whether or not the complainants are entitled to enforce the terms of their written contract for a distribution of the trust moneys, or whether, by reason of their having entered into that contract, they have violated the public policy of this state. *Page 141