[Civ. No. 27921.   Second Dist., Div. Four.   May 12, 1964.]

Estate of ROBERT O. McKENZIE, Deceased. UNITED CALIFORNIA BANK, as Executor, etc., Petitioner and Respondent, v. STANLEY MOSK, as Attorney General, Objector and Appellant; MARIAN SHEPARD et al., Claimants and Respondents.

Stanley Mosk, Attorney General, and Carl Boronkay, Deputy Attorney General, for Objector and Appellant.

William Levin, Justin Graf and L. H. Pemberton for Petitioner and Respondent and Claimants and Respondents.

KINGSLEY, J.—Robert O. McKenzie died testate leaving a holographic will. The only portion of said will in dispute herein declares:

"I want a trust to be formed payable as a reward to the person who decides the cause of Rhomatoid [sic] Arthritis and a cure for the same to the satisfaction of the Medical Board of the University of Calif. at L.A."

United California Bank, as executor of the above entitled estate, filed a petition for a decree determining interests in estate under section 1080 of the Probate Code and for instructions to executor under section 588 of the Probate Code. In response thereto a statement of interest was filed by the Attorney General of the State of California asserting that, under the terms of the decedent's will, the residue of the estate constitutes a valid charitable trust. The Regents of the University of California filed a statement regarding the qualifications and willingness of the Regents of the University of California to serve as testamentary trustee. A statement of interest in the estate was filed by Marian Shepard alleging she is a niece and heir-at-law of the decedent and contending that the above quoted portion of the will is invalid and, accordingly, the residuary estate (which this clause purports to dispose of) passes by intestacy to the heirs-at-law of the decedent.

The petition to determine interests in the estate came on regularly for hearing, at which hearing only evidence of the relationship to the decedent of persons claiming to be his heirs-at-law was presented. No conflicting evidence was presented and no dispute exists on this matter. Following the trial, the court found that the above quoted will provision did not qualify as a charitable trust, and failed as a private trust for lack of an identifiable beneficiary or beneficiaries and because the interest of the beneficiary or beneficiaries violated the rule against perpetuities in that the interest or interests may not vest within the period required by law. As a conclusion of law, the court declared the aforesaid residuary clause invalid and that, "All property of decedent disposed of by the above quoted provision of decedent's last will shall go and be distributed to decedent's heirs-at-law by intestate succession." Accordingly, the trial court entered its decree determining interest in estate, ordering the residue of the said estate distributed in equal shares to the five heirs-at-law surviving the decedent.

From this determination, the Attorney General prosecutes this appeal.

At the outset, the Attorney General concedes that, unless the provision of the will in issue qualifies as a charitable trust, it is invalid for lack of an identifiable beneficiary and violation of the rule against perpetuities. On the other hand, it is well established that neither of these requirements or limitations on private trusts applies to charitable trusts. (*People* v. *Cogswell* (1896) 113 Cal. 129 [45 P. 270, 35 L.R.A. 269] ; *Estate of Hinckley* (1881) 58 Cal. 457.)

A charitable trust has been defined as a "... trust for promoting the welfare of mankind at large or of a community, or of some class forming a part of it, indefinite as to numbers and individuals." (*People* v. *Cogswell, supra* (1896) 113 Cal. 129, 138.)

Respondents argue that the beneficiary of Mr. McKenzie's gift is one single person and not the general public; and the fact that a public benefit may arise by reason of the work of this particular individual is immaterial, citing *Estate of Kline* (1934) 138 Cal.App. 514 [32 P.2d 677].

However, "A trust for the prevention or cure or treatment of diseases or otherwise for the promotion of health is charitable" (Rest. 2d Trusts, § 372; Scott on Trusts,. § 372, pp. 2661-2662) ; and "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and

accomplishments are of religious, educational, political or general social interest to mankind. [Citations.] (2) The *ultimate* recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. [Citations.]'' (Italics added.) (*Estate of Henderson* (1941) 17 Cal. 2d 853, 857 [112 P.2d 605], as quoted with approval in *Estate of Robbins* (1962) 57 Cal.2d 718, 722 [21 Cal.Rptr. 797, 371 P.2d 573].) ▮ The fact that the trust assets may be paid to an individual in no way deprives the trust of its charitable character if the ultimate result complies with the test of charitable purpose. (*Sheen* v. *Sheen* (1939) 126 N.J.Eq. 132 [8 A.2d 136]; *In re Judd's Estate* (1934) 242 App.Div. 389 [274 N.Y.S. 902].)

In the *Judd* case, the trust provision in the will directed the trustees, ''. . . out of the net income thereof to pay each year the sum of one thousand dollars to the person who, in the judgment of the trustees or other managers of said hospital, shall have made the greatest advancement toward the discovery of a cure for cancer. . . .''

The judgment of the trial court holding the above quoted provision invalid was reversed on appeal, the appellate court stating:

''The Surrogate has held the trust to be invalid because it provides for payments to persons who shall have made the greatest advancement in the discovery of, or who shall eventually have discovered, a cure for cancer. These provisions, in the opinion of the Surrogate, invalidate the trust 'because by its terms it provides plainly for a gift to an individual or individuals for his or their own use.' If this be the correct view, then many of the most useful benefactions of modern times are not to be classified as charitable.

''We think this conclusion proceeds upon too restricted a conception of a charitable use. In reaching it, the Surrogate considered only the immediate destination of the funds and disregarded what seems to us the dominant purpose and the wider implications of the trust. If the purpose of the trust were merely to benefit research workers in cancer, it would not be saved by reason of the useful nature of their work. [Citations.] But this involves, we are convinced, a misconception of its purpose. That purpose is the encouragement of research in the field of cancer by rewarding those who shall have been most useful in the investigation of a subject which has baffled the medical profession. It is not to be supposed that it was the intention to enrich the unidentified indiv-

duals who might happen to be successful in this research work, except as this was incidental to the achievement of a purpose to benefit mankind. The real beneficiaries are those afflicted who are expected to benefit by the research which may be stimulated by the hope of pecuniary reward. The trust is not invalid merely because it contemplates payments to individuals for their private use. That situation exists in any charitable trust which requires for the discharge of its functions the employment of compensated employees. They, too, receive emoluments 'for his or their own use.' Yet it will not be contended that such charities are created in order to compensate their employees. They are created, as was the trust here, to secure the advantage of their services in effectuating the objects of the charity. Wherever the question seems to have arisen, it has been decided in this way. [Citations.]''

By the same token, in *Sheen* v. *Sheen* (1939) 126 N.J.Eq. 132 [8 A.2d 136], the provision of the will directing the trustee ''to establish a Trust Fund, income of which is to be used annually for the purpose of awarding a prize to the outstanding Doctor of Medical Science in the United States for each year'' was held to create a valid charitable trust. In answer to the contention that the awarding of a prize to an individual is incompatible with the trust being a charitable one, the court had this comment in reply:

''The benefits of the award are of a two-fold nature, first, to the outstanding doctor, a sum of money as a prize or award, and secondly, an indefinite number of persons in the United States, i.e., the general public, who must necessarily receive the benefits of the development of the science of medicine attained through the study and research of members of the medical profession, not only the doctor who gets paid in part for his services, but other doctors who make research and are not fortunate enough to receive the award. The real benefits to the public and the benefits intended to be secured by the trust are the results of the study and research of the doctors of the United States, as those results are handed down to the medical profession and by them to their patients.

''Does the fact that the trust provides for a prize or award to the doctor invalidate an otherwise valid charitable trust? I think not. In 14 C.J.S., Charities, § 15, p. 447, it is stated: 'A bequest of a fund for the giving of prizes and medals for educational, medical, or literary, work, or other

deeds beneficial to the general public, is a valid charitable gift.' "

We deem both the reasoning and the logic of the *Sheen* and *Judd* cases to be controlling in the situation before us. ▮ Here the natural consequences of providing a reward for the discovery of the cause and cure of rheumatoid arthritis are to stimulate research in this field. In reality, the public is the true beneficiary of what will result from the operation of this trust. The fact that a particular individual some day may qualify to receive the reward is but the instrumentality through which the benefits that will be bestowed upon the public are brought about. To consider such individual the beneficiary of the trust is to confuse the trust purpose with the means provided for achieving that purpose.

▮ The fact that the trust provision of decedent's will does not provide for a trustee is in no way fatal to the validity of the trust. It is well settled in this state that a trust will not fail for want of a trustee. The court will appoint a trustee. (*Estate of DeMars* (1937) 20 Cal.App.2d 514 [67 P.2d 374]; *Fay* v. *Howe* (1902) 136 Cal. 599 [69 P. 423]; *Estate of Upham* (1899) 127 Cal. 90 [59 P. 315].) ▮ Nor does this trust fail by reason of the fact that the income of the trust may be accumulated for longer than the period allowed by section 724 of the Civil Code, because charitable trusts are exempt from restrictions pertaining to accumulations. However, the matter is one that is subject to judicial supervision. (Scott on Trusts, § 401.9.)

▮ We recognize that, in addition to a possible necessity for dealing, at a future date, with the problem of accumulated income, there may arise other problems of interpretation in the event that one person may claim to have shared in the discovery of the cause but not the cure of the disease involved, while the cure may be the discovery of a second person. But these problems may, or may not, ever arise. When, and if, they do, the court can make appropriate orders in the exercise of its continuing supervisory powers over its trustee. The mere possibility of the problems does not affect the existence or the validity of the trust itself.

The decree appealed from is reversed and the matter is remanded to the trial court with directions to enter a decree sustaining the trust, appointing a trustee, and distributing the residuary estate to such trustee, such decree to reserve in the court power, on proper application, to instruct the

trustee in the event any problem in interpretation of the trust or in the management of the trust estate shall hereafter arise.

Burke, P. J., and Jefferson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 8, 1964.