MARY ANN HESKETH, appellant,

*v.*

JOHN MURPHY et al., executors and trustees &c. of William S. Malcom, deceased, respondents.

1. A bequest of a fund in trust, the annual interest thereof to be employed by designated trustees for "the relief of the most deserving of the poor of the city of Paterson aforesaid forever, without regard to color or sex, but no person who is known to be intemperate, lazy, immoral or undeserving, to receive any benefit from the said fund "—*Held*, valid as a charitable use.

2. The power to dispense the fund carries with it, by implication, the power to select the particular beneficiaries.

On appeal from a decree of the chancellor, whose opinion is reported in *Hesketh* v. *Murphy, 8 Stew. Eq. 23.*

The will of William S. Malcom, dated December 18th, 1871, after creating certain trusts in favor of his wife &c., contained the following clauses, viz. :

"And after the death of my said wife, I hereby empower and direct my said trustees or trustee for the time being of this my will, to employ the annual income of the said moneys so invested, and from time to time to be invested, for the relief of the most deserving poor of the city of Paterson aforesaid forever, without regard to color or sex, but no person who is known to be intemperate, lazy, immoral or undeserving, to receive any benefit from the said fund.

"And for the purpose of preserving and continuing a perpetual succession of trustees for the purpose of carrying into full effect the provisions of this my will, I do hereby empower my said trustees or trustee for the time being, if any, whether retiring from the office of trustee or not, or if more, then I direct and hereby empower the proving executors or executor for the time being, or the administrators or administrator for the time being of the last surviving trustee, to substitute by any proper writing under his, her or their hands or hand, any fit person or persons, in whom alone, or as the case may be, jointly with the surviving or continuing trustees or trustee, my trust estate shall vest. or proper assurances be vested."

*Messrs. Bolton & Gourley,* for appellant.

*Mr. H. A. Williams,* for respondents.

The opinion of the court was delivered by

Beasley, C. J.

This bill has been exhibited by the sister of William S. Malcom, deceased, for the purpose of obtaining a judicial construction of those certain clauses of his last will which are prefixed to this opinion. The testamentary provision thus put to the test is a charitable bequest, and the view which the counsel of the complainant pressed upon the court was, that such bequest is void, on the ground of its indefiniteness with respect to its objects.

Upon recurring to the language of that portion of the will which is thus impugned, it will be found that the annual income of a certain fund, which is in the hands of certain trustees appointed by the testator, is to be employed by them for the relief of such of the most deserving poor of the city of Paterson as are not intemperate, lazy or immoral. The testator has not left his intention in any wise in doubt. His purpose is plainly charitable in the legal sense. He has constructed a trust to carry such purpose into effect, and the class of persons who are to be his beneficiaries is clearly defined. But the contention is, that the persons who from time to time are to compose this class of beneficiaries must be possessed of certain specified qualifications distinguishing them from their associates in poverty in the city of Paterson, and such qualifications are of a kind not easily ascertainable, and inasmuch as a power of such ascertainment is not by the will conferred upon any one, the gift cannot be applied to its objects, and is therefore void.

That a charitable use may be inefficacious on account of the indefiniteness or unascertainability of its purposes or objects, is readily admitted. Nor is it denied that certain gifts of this kind which, under some circumstances, would be put into effect by force of the ancient English legal system, would, under like conditions, prove unavailing if brought *sub judice* in this state. In England, the lord chancellor, in matters of this kind, transcends judicial methods, and will effectuate one of these bequests where the general purpose of the donor is charitable, although the par-

20

ticular purpose which has been designated by him has failed and no trust has been created; but this is by force of a prerogative derived from the king, who is said to possess it as *parens patriæ*. And it is this latter extraordinary power which has been almost universally conceded not to belong to the courts of this country. But with the exception of this prerogative, I am not aware that the court of chancery of this state is devoid of any power which has ever been exerted by an English chancellor with respect to the construction, regulation or enforcement of devises or bequests to charitable uses.

Our equitable system is a copy and counterpart of the English chancery, and does not differ from it except wherein it has been varied by positive law, ancient custom or by conditions of life plainly incompatible with its regulations. In the main, the equitable jurisdiction exercised in this state can be expressed, and can be expressed only, in the terms that define the boundaries of its archetype. Such is the admitted condition of all our superior tribunals, for their essential substance and qualities are derived to us, as a people, by descent, and do not exist by mere legislative sanction. Hence it would seem to follow, by irresistible inference, that whatever power touching charitable gifts was originally, as a purely judicial function, vested in the chancellor of England, is vested in the chancellor of this state, for there is no statutory law, as I think, nor custom, curtailing such power, nor is its exercise inconsistent, in any degree, with our social or political situation. It is true that the English statute of charitable uses is not in force in this state, and, so far as such statute may be said to have enlarged the sphere of equitable jurisdiction over this subject—though the supposition seems to me unfounded—to that extent the judicial power of our chancery may be wanting. But the present occasion does not call for the consideration of the involved and much-contested question as to the effect of this act over the equitable doctrine of charitable uses, for whether such enactment is to be regarded as having added something to the extent of the equitable cognizance over the subject, or, as Lords Hardwicke, Eldon, Redesdale and other chancellors declared, created no new jurisdiction, but merely provided a novel

mode of proceeding in cases of the misappropriation of charitable funds, still it has been made certain by modern research that the primitive and inherent powers of a court of equity in this domain are *sui generis* and of a very extensive character, and, as has been above stated, whatever such original authority was, it exists in full vigor in the hands of the chancellor of this state, and it is in accordance with this theory that the few judicial examinations of this subject which have taken place in our courts have been conducted.   Thus in the case of *The New York Annual Conference Ministers Mutual Assistance Society* v. *Executors of Clarkson, 4 Hal. Ch. 541*, the bequest was in the following words :

"I give and bequeath unto the New York Methodist Conference Society, for the support of old, worn-out preachers, the sum of three thousand dollars."

The complainant in the case, and which was thus misdescribed in the will, was an incorporated body whose purpose was to raise funds for the relief of such of its members, who were all ministers and preachers of the gospel attached to and connected with the New York conference, as were in necessitous circumstances through age, disease or other natural infirmity, as also the needy wives and children, widows and orphans of its members.   This bequest was sustained as a charity notwithstanding its beneficiaries were a sub-class of the beneficiaries of the corporation, which sub-class of necessity would have to be selected, and no express powers to make such selection had been given by the testator. A similar doctrine was enforced in *McBride* v. *Elmer's Executors, 2 Hal. Ch. 107*, which was decided in the year 1847.   A fund of $1,000 was bequeathed to "The Bridgeton Trustees for Free Schools," the interest to be applied annually for ages, as far as might be practicable, for the tuition of poor children without regard to denomination or color, in the elements of English literature.   In this case, likewise, there was a misnomer of the trustees, and there was no power in terms conferred to settle who came within the class appointed to take as beneficiaries, yet, nevertheless, the court, after a learned argument, sustained the

testamentary disposition as a charitable use. The following are cases in which, in the court of chancery, similar views have been expressed and like judgments have been rendered : *Magie* v. *German Evangelical Dutch Church, 2 Beas. 77 ; Mason* v. *Methodist Episcopal Church, 12 C. E. Gr. 47 ; Stevens* v. *Shippen, 1 Stew. Eq. 487.* And that the peculiar doctrine of the English law relating to charitable uses, so far as the same rests on judicial functions, is plainly recognized and enforced in some measure by this court appears in the cases of *De Camp* v. *Dobbins, 4 Stew. Eq. 671 ; Norris* v. *Thomson, 5 C. E. Gr. 489 ; Attorney-General* v. *Moore, 4 C. E. Gr. 503.*

This being the condition of the judicial authority over this subject in this state, it becomes at once evident that all but one of the decisions which are so numerous, and which are pressed upon the attention of this court in the brief of the counsel of the appellant, cannot be looked upon in the light of authorities. With the single exception just noted, and which is an adjudication which will be presently referred to more at large, the cases in question are examples of gifts that might be devoted to purposes other than charitable uses, or are determinations of courts existing in jurisdictions in which the doctrine derived from English sources that regulates the subject of such charities, has no place, and in which bequests for such objects are regarded as private trusts, and are construed and regulated on that basis. To the former of these two classes of cases the English cases which are cited appertain, for they are either private trusts, or, like the case of *Norris* v. *Thomson's Executors*, the bequests in question embrace a use other than a charitable one. It would serve no useful purpose to consider those references in detail. It is enough to say that they have been carefully examined, and that they are not pertinent on the present inquiry. In the other class, decisions are cited rendered by the courts of Maryland, North Carolina and New York ; but inasmuch as in these states it has been declared that the rules to be applied in the construction and administration of trusts for charitable uses are, in their respective jurisdictions, the same as are the rules by which private trusts in favor of individuals are adjudged, they can have

Hesketh *v.* Murphy.

no influence on the judicial mind in this state, in which an entirely different system, as has been already stated, has always prevailed. But I have alluded to an exceptional case to be found among the citations of counsel of American cases, and that case is the decision in *White* v. *Fisk, 22 Conn. 31*. The bequest in that case was in these words :

"Any surplus income that may remain to the extent of $1,000 per annum, I direct to be expended by my said trustees for the support of indigent, pious young men preparing for the ministry in New Haven."

The judgment was that the gift was void, as the objects of the benefaction were indefinite, and that no power was conferred on the trustees to make them definite by selection. This case is certainly in all respects much in point, and in the jurisdiction in which it occurred and was decided, the equitable rules which prevail with respect to this branch of jurisprudence, appear to be very similar to those that are in force in this state. But it seems to me very clear that the court, on the occasion in question, fell into error in the application of one of the principles belonging to the subject adjudged by it, and I therefore agree to the criticism of Mr. Perry, *in his excellent treatise on Trusts*, that this decision is not one that is likely to be followed.

The mistake referred to consists in the assumption after, apparently, but a slight consideration of the topic, that there was no power to select the objects of the charity lodged by the testator in the trustees, whereas, as I am constrained to think, in view of the very liberal rules of construction which have always been declared to be applicable to occasions of this character, such power was clearly conferred upon such officers. In such matters the paramount business is to ascertain from the language of the will, as explained by the subjects to which it pertains, the purpose of the testator, and if such purpose be not illegal, and can be plainly ascertained, to carry it into effect. And it is to be remembered that it is the acknowledged doctrine that in all matters of construction courts are bound to lean in favor of charity rather than against it. And, indeed, so far has this legal

favoritism been carried that it has been for ages the settled rule in the English law, and has been in this country often regarded as the true principle, that when a gift has been placed in the hands of a trustee to promote a charity, and which, from the mutation of circumstances, had become incapable of fulfillment, such gift was to be applied by the courts, exercising a purely judicial authority, to some cognate object, on the ground that it was the presumed intent of the testator that the fund so set apart as a benefaction should not, in any event, return to his estate. The present case does not call for any opinion on the important question how far, in the application of simply judicial standards, the courts of this state would undertake to exercise the doctrine of *cy pres* by construction; the subject is referred to only for the purpose of exemplifying with what strength of favor charitable bequests are regarded by the courts. But without resorting to a method of interpretation which, until it has received the sanction of the courts of this state, must be considered as of questionable validity, and following none but the ordinary guides in the construction of wills, I cannot doubt that the inevitable conclusion must be that the testamentary disposition in the case cited from the Connecticut reports, as well as the one now under consideration in this court, confers upon the trustees not only the power to distribute the funds confided to them, but, as a necessary incident to that function, also the right to select the beneficiaries. It is the ordinary doctrine that when an act is authorized to be done by a trustee or other agent, every authority requisite to the doing of such act is, by intendment of law, comprised in such grant of power. A common example of this rule is presented in cases in which a power of sale is given by a will without in terms specifying by whom it is to be exercised, but if the proceeds of the sale are directed to be distributed by an executor or trustee, in such instances it has been held in numerous decisions that such executor or trustee will take, by implication, the power of selling, unless some other intent is discoverable from the whole will. *Newton* v. *Bennet, 1 Bro. C. C. 135; Bentham* v. *Wiltshire, 4 Madd. 44; Blatch* v. *Wilder, 1 Atk. 420.*

When, therefore, in the Connecticut case and in the present case, a power is conferred on the trustees to distribute the fund to members of a class, such members having certain qualifications, which can be ascertained only by the exercise of judgment and discretion, as the act of distribution cannot be performed except after such ascertainment of the particular beneficiaries, the principal power to distribute the moneys carries with it, on the ground of the principle just mentioned, the incidental and necessary power of selection. That such was the intent of the testator would seem to be plainly manifest from the nature of the thing, the doing of which he has directed. If a gift of a sum of money were given to a clergyman with directions to distribute it among the most worthy and needy of his flock, no one, it is presumed, would doubt that the power to select the objects of such beneficence was intended to be lodged in him who was to dispense the fund. In this example, as well as in these testamentary gifts, inasmuch as the power to select is an indispensable preliminary to the power to dispense, the natural and reasonable inference arises that when the latter is expressly given the former is impliedly given. As far as I have noticed, this has been, except in the case of *White* v. *Fisk*, the judicial deduction from similar premises.

In the case of *Trustees of the Philadelphia Baptist Association* v. *Hart's Executor, 4 Wheat. 1*, Chief-Justice Marshall appears to have had no doubt on this subject. The words of the will in that case were:

" What remains of my military certificates at the time of my decease, both principal and interest, I give and bequeath to the Baptist Association that for ordinary meets at Philadelphia, which I allow to be a perpetual fund for the education of youths in the Baptist denomination who shall appear promising for the ministry, always giving preference to the descendants of my father's family."

It is observable that here is no express authority to the designated association to make a selection of the beneficiaries entitled to take under this bequest, and yet the chief-justice drew the inference, apparently without the least hesitation, that such was

Hesketh v. Murphy.

the province of that body. The court in this case decided on grounds that have been much shaken, but with which at present we have no concern, that the association that was constituted the trustee being unincorporated could not stand in such capacity, and consequently the question whether the beneficiaries were, in the absence of such officers, sufficiently indicated, became important, and upon that subject the court said: "This question will not admit of discussion. Those for whose ultimate benefit the legacy was intended are *to be designated and selected* by the trustees. It could not be intended for the education of all the youths of the Baptist denomination who were designed for the ministry, nor for those who were the descendants of the father, unless, *in the opinion of the trustees*, they should appear promising. These trustees being incapable of executing the trust, or even of taking it on themselves, *the selection* can never be made nor the *persons designated* who might take beneficially." In this case it will be observed that the fund was given to the association, without any expressed direction for it to distribute such fund or to select the beneficiaries, and yet, looking to the evident intention of the testator, both such powers were unhesitatingly gathered by intendment. To the same purport, and equally strong on the point, was the action of Lord Redesdale, in the case of *Mahon* v. *Savage, 1 Sch. & Lef. 111,* in which the bequest was of £1,000, with the following directions:

"To be distributed amongst his poor relations, or such other objects of charity as should be mentioned in his private instructions to his executors."

There were no such private instructions left by the testator, and there were over fifty poor relations. The chancellor, after remarking that the bequest was a charitable one, and that the objects meant were the testator's own relations, added: "Here the testator's design was to give them as objects of charity, and not merely as relations, and I take it, the executors have a discretionary power of distribution, and need not include all the testator's poor relations."

Here, again, there was nothing in the will from which the

testator's intention to confer upon his executors the authority to select the beneficiaries except the authority given to them to distribute the fund, and yet this eminent judge thought that such intention was clear as a plain inference. These two cases put the matter, in my opinion, on a legal basis. The principle adopted by these great judges, if applied to the case now before the court, must obviously lead to an affirmance of the decree appealed from; for if we assume, as was done in the decisions just referred to, that the power to employ this charity involves the power of selecting the beneficiaries, the case is divested of every element of uncertainty. In view of the recognition of such an hypothesis, the case will then present these simple characteristics: A bequest in trust to a charitable use, for distribution among a class of undesignated persons, with a power in the trustees to designate such persons. It is presumed that in such a posture of things no one will assert that the bequest is not to be sustained. The decree should be affirmed.

*Decree unanimously affirmed.*