CORNELIUS CRANE and others, as executors of the last will and testament of Richard T. Crane, Jr., deceased, complainants,

*v.*

MORRISTOWN SCHOOL FOUNDATION and others, defendants, and ARTHUR G. BAKER, as trustee for the creditors of MORRISTOWN SCHOOL FOUNDATION, and MORRISTOWN TRUST COMPANY, THE FIRST NATIONAL BANK OF MORRISTOWN and the NATIONAL IRON BANK OF MORRISTOWN, individually and as the CREDITORS' COMMITTEE OF MORRISTOWN SCHOOL FOUNDATION, defendants-appellants, and MORRISTOWN SCHOOL ALUMNI, INCORPORATED (counter-claimant below), DAVID T. WILENTZ, attorney-general of the State of New Jersey, and CRANE COMPANY, defendants-respondents.

CORNELIUS CRANE, JOHN K. PRENTICE, and CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, executors under the last will and testament of Richard T. Crane, Jr., complainants-respondents,

*v.*

MORRISTOWN SCHOOL FOUNDATION, ARTHUR G. BAKER, trustee or creditors of MORRISTOWN SCHOOL FOUNDATION, and CRANE COMPANY and MORRISTOWN TRUST COMPANY, THE FIRST NATIONAL BANK OF MORRISTOWN and THE NATIONAL IRON BANK OF MORRISTOWN, individually and as the CREDITORS' COMMITTEE OF MORRISTOWN SCHOOL FOUNDATION, and DAVID T. WILENTZ, attorney-general of the State of New Jersey, defendants-respondents, and MORRISTOWN SCHOOL ALUMNI, INCORPORATED, defendant-appellant.

[Submitted May term, 1936. Decided October 2d, 1936.]

*Messrs. Pitney, Hardin & Skinner* (*Mr. Shelton Pitney* and *Mr. Edward K. Mills, Jr.*), for the defendants-appellants.

*Messrs. Lindabury, Depue & Faulks* (*Mahlon M. Meier*), for Morristown School Alumni, Incorporated.

The opinion of the court was delivered by

BODINE, J.

The Morristown School Foundation, a corporation of this state (hereinafter referred to as School), was incorporated in 1911 to provide for the training of youth. The Morristown School Alumni, Incorporated, a New Jersey corporation (hereinafter referred to as Alumni), was organized to take over the school property after insolvency. It now conducts a school in the premises formerly occupied by the school. Arthur G. Baker, trustee for the creditors of the School, was chosen to take the School out of a receivership in the federal court. The above, together with the attorney-general, were all parties to the present action, which involves the beneficial right in the School endowment fund.

The School had been conducted for six or seven years when it became apparent to its trustees that in order to properly function it must have an income, in addition to the tuition fees received. Mr. Edward K. Mills, one of the trustees, in January of 1917, made a gift to be applied to the commencement of a general endowment fund. Within a few days, the trustees passed the following resolution: "That an Endowment Fund shall be at once established, and vested in the

Trustees of the Endowment Fund as provided for in Article III, Section 1 of the By-Laws, the *income of which fund* shall be used from time to time, in the discretion of said Trustees, *for increasing the salaries of Masters and teachers, for providing scholarships to pay the tuition in whole or in part of worthy boys,* otherwise unable to secure the opportunities and privileges offered, *and/or for any general purposes that may be necessary or desirable.*" (Italics here and hereafter appearing ours.) This resolution clearly discloses a purpose to provide a permanent endowment, the income from which was to be used for school purposes. There must arise a presumption that those subscribing thereto made their donation for the specific purpose declared.

The Alumni and friends of the school were later canvassed and subscription blanks accompanying the gifts of some of the donors contained the following recital: "To enable the Trustees of Morristown School Foundation, in reliance upon this and other subscriptions, to establish an endowment fund, to increase the salaries of the teaching staff and for the general purposes of the School, I agree to give the Morristown School Foundation as follows:" Some years later, Mr. Crane wrote to the then headmaster of the school as follows: "I expect to send the school a moderate amount of our preferred stock for its Endowment Fund. Shall I do this through the parent association or direct? I want to execute a simple instrument that will give me the voting rights and arrange that the Trustees will furnish me this every year."

Undoubtedly, the headmaster promptly gave the desired information, because a few weeks later Mr. Crane wrote as follows: "I propose to give to your Foundation [the school] five hundred (500) shares of the Preferred Capital Stock of Crane Company, on condition that the stock will be held by you and the *income arising therefrom* used for the purposes of your Foundation, and that during my lifetime proxies will from time to time be issued to me or to such person as I may designate to attend the annual meetings of the shareholders of Crane Co., and vote said shares of stock, and that on my death or incapacity to act, said proxies will be issued

to my son, Cornelius Crane, authorizing him, or such person as he may designate to vote said shares of stock in like manner. If this proposition is satisfactory, you may approve the same by accepting the same hereon."

The proposition was accepted and the shares of stock were presently issued in the name of the School. Later, Mr. Crane repurchased two hundred shares of the stock, the proceeds being used with his consent for general school purposes. The securities purchased from the funds received in response to the request for the endowment, together with the five hundred shares of the Crane stock later reduced to three hundred shares, were kept in a safe deposit box in the Morristown Trust Company and the income, as received, was deposited in a separate account designated "Endowment Fund." It later was appropriated by the board of trustees for such purposes as seemed necessary or desirable. The circumstance that on one occasion the securities were pledged with the consent of some of the donors proves nothing. It never occurred again and at the time of the receivership none were pledged.

In April of 1932, a creditor of the school applied for and secured the appointment of a receiver in the United States district court for the district of New Jersey. Thereafter an agreement was entered into between the creditors of the School and the receiver providing for the appointment of Mr. Baker as trustee for the creditors. Simultaneously, the Alumni was incorporated for the purpose of organizing and operating a boys' boarding and day school in Morristown. The federal court authorized its receiver to convey all real estate and personal property of the school, including the endowment fund after the payment of the expenses of the then receiver, to Baker, as trustee for the benefit of the creditors. The receiver was discharged. Alumni purchased from Mr. Baker, as trustee, the real propery on which the buildings of the school were erected, together with all the equipment of every sort, subject to two mortgages aggregating $50,500 held by the Morris County Savings Bank. Alumni also executed a purchase-money mortgage in the sum of $10,000 to Mr. Baker, as trustee. Since the conveyance, the Alumni have

continued to operate a school. The receiver delivered to Mr. Baker, as trustee, the securities carried on the books of the school as capital assets of the endowment fund, including the three hundred shares of Crane seven per cent. preferred stock. The agreement by which the receivership was lifted provided that there should be a creditors' committee consisting of the Morristown Trust Company, the First National Bank of Morristown and the National Iron Bank. The creditors hoped to benefit from the endowment fund which was reserved in the conveyance to Alumni.

The original bill filed by the Crane estate sought the recovery of the stock donated by Mr. Crane on the theory that the trust had failed. The Alumni, by its counter-claim, sought to obtain all the money and securities carried in the school endowment fund, including the Crane stock. The Crane executors at the hearing abandoned their claim that the Crane stock had reverted to the estate and asserted that the shares were donated in trust for charitable purposes, and that since the original trustee could no longer act the shares should be held and administered as nearly as might be according to the original purpose by the Alumni as successor or substituted trustee for the school.

The vice-chancellor to whom the case was referred found that the Alumni was entitled to act as trustee of a charitable trust in the Crane Company stock, but not so as to the other securities in the endowment fund which he found should be devoted to the payment of the creditors of the school. The finding of fact was that the Alumni had not made sufficient proof of the donors' intention to make a gift to the endowment fund, the income of which was to be devoted to the purposes expressed in the resolution of the trustees of the school, above quoted, passed when the fund was first created.

In this, we think, there was error. An endowment fund having been created, the income of which was alone to be used for specific purposes, it seems clear that those thereafter contributing thereto intended that their gift was for that use. The friends and graduates of the school making contributions in money or securities for an endowment fund then in exis-

tence undoubtedly contemplated that their money and securities would be permanently devoted to school purposes and this could only be done if the fund was kept separate and the income so used. The fact that contributions were solicited and received by the school for an endowment fund, the income of which was to be used for school purposes, and the fact that contributions when so received were placed in a separate fund, is indicative of the donor's intention that the gift was made for the purposes for which it was requested and used.

"If a trust is contemplated and endowed with funds from any source, for a general public purpose, it will be regulated and controlled by a court of equity, upon proceedings instituted before it." *Perry Trusts 1199*. This is not a case where the trustees of the school had attempted to place property, by their own act, out of the reach of their creditors (*Magie* v. *German, &c., Church, 13 N. J. Eq. 77; affirmed, 15 N. J. Eq. 500*), but is a case where donations received for the definite purpose of increasing the endowment fund were set aside for that very purpose.

Chancellor Green said in the *Magie Case, supra:* "Where property is given to a corporation in trust for a charitable use, the trust is the creature of the donor. He may impose upon it such character, conditions and qualifications as he may see fit. *The property being a gift, no wrong is thereby done to the creditors of the corporation, and a court of equity may well protect and enforce all the conditions of the gift.*"

"A valid trust of personal property may be created by mere spoken words, and proved by parol evidence." *Danser* v. *Warwick, 33 N. J. Eq. 133; affirmed, 34 N. J. Eq. 578*. See, also, *Pitney* v. *Bolton, 45 N. J. Eq. 639; affirmed, 46 N. J. Eq. 610; Hudson Trust Co. v. Holt, 115 N. J. Eq. 34*.

In *Taylor's Ex'rs* v. *Trustees of Bryn Mawr, 34 N. J. Eq. 101*, an endowment fund for a college charging and receiving tuition from its scholars was held a charitable trust. See, also, *Hesketh* v. *Murphy, 36 N. J. Eq. 304; McKenzie* v. *Trustees of Presbytery of Jersey City, 67 N. J. Eq. 652; Stevens* v. *Shippen, 28 N. J. Eq. 487*.

The word "endowment" as defined in Webster's New Inter-

national Dictionary is as follows: "That which is bestowed or settled on a person or an institution, property, fund or revenue *permanently appropriated to any object,* as the endowment of a college."

"The endowment is that particular fund, or part of the fund, of the institution, bestowed for its more permanent uses, and usually *kept sacred for the purposes intended." The State, &c.,* v. *Lyon, Assessor, 32 N. J. Law 360* (at *p. 361).*

"*A fund of money so settled that the income therefrom shall be permanent aid in, carrying on* the work of a religious society is the most obvious instance of an endowment, as such term is defined by lexicographers and as the subject is known in the affairs of men." *State, &c.,* v. *Silverthorn, 52 N. J. Law 74.*

Chief-Justice Beasley said in *Hesketh* v. *Murphy, 36 N. J. Eq. 304, 309:* "And it is to be remembered that it is the acknowledged doctrine that in all matters of construction *courts are bound to lean in favor of charity rather than against it.* And, indeed, so far has this legal favoritism been carried that it has been for ages the settled rule in the English law, and has been in this country often regarded as the true principle, that when a gift has been placed in the hands of a trustee to promote a charity, and which, from the mutation of circumstances, had become incapable of fulfillment, such gift was to be applied by the courts, exercising a purely judicial authority, to some cognate object, on the ground that it was the presumed intent of the testator that the fund so set apart as a benefaction should not, in any event, return to his estate." See, also, *Noice* v. *Schnell, 101 N. J. Eq. 252.*

"*Cy pres* is translated by Kelham .(*Norm. Fr. Dict.*) 'as near as may be.' The doctrine of *cy pres* is therefore the doctrine of nearness or approximation, and it appears in English jurisprudence in three separate departments, yet with similar operation and effect. * * * In the law of *charitable trust,* where gifts have been made for charitable purposes which either originally or in the course of time, cannot be literally executed. Here the gift will be administered, as nearly as may be, according to the donor's purpose, under

general rules of law. * * * The present case does not call
for any opinion on the important question how far, in the
application of simply judicial standards, the courts of this
state would undertake to exercise the doctrine of *cy pres* by
construction. * * * The sound rule now is—at least in
America—that courts will not execute charitable trusts in a
manner different from that intended, unless the intent cannot
in the original mode be literally carried out; that they will
preserve the substance, although the mode be departed from,
and that they will not presume or invent an intention which
the testator or donor has not fairly indicated." *MacKenzie*
v. *Trustees, &c., supra* (at *p. 675*).

In *In re Young Women's Christian Association, 96 N. J.
Eq. 568* (at *p. 573*), it was held that: "When a gift for chari-
table uses can no longer be administered in exact accordance
with the intention of the donor, this court has power, under
its general equity jurisdiction, to direct that the gift be
administered *cy pres*—that is, as nearly as possible in con-
formity with the intention of the donor."

It seems perfectly clear that if the income from a trust fund
cannot be used for the aid of one boys' school in Morristown
it can be used for the aid or another now existing.

The argument is made in behalf of the creditors that the
Alumni are estopped by reason of the reservation contained
in the trustees' deed. Since it is clear that there was a valid
charitable trust created, we fail to see how the ultimate bene-
ficiaries of that trust are estopped by any act of the Alumni
in accepting a conveyance of the school property. The
Alumni, under court order, merely applies the income from
the trust fund by virtue of the decree of the court, and in
spite of the deed and the agreement whereby it was sought
to defeat the intention of the original donors of the fund.
The receiver for the School had no equitable right in the
endowment fund, nor had the Alumni prior to the court's
adjudication that there was a cognate purpose to which the
income from a charitable trust should be devoted. The real
beneficiaries of the fund are the boys who now attend a like
school in Morristown and those who in the future will attend

such a school. It was for their benefit that the fund was created. They are not parties to any contract, nor was there nor could there be any conduct by them from which an estoppel would arise. The facts are very different from those in *Basen* v. *Clinton Trust Co., 115 N. J. Law 546.*

It is clear to us that the United States district court had no jurisdiction whatever to deal with the final disposition of this charitable trust. It does not appear that the attorney-general was a party to that proceeding. The court took jurisdiction because a bill for receiver of an insolvent corporation was consented to by the offender. It could not and did not presume—the necessary parties not being before it—to adjudicate anything with respect to a charitable trust for the benefit of those persons who might thereafter attend a school in Morristown.

We agree with the learned vice-chancellor when he said: "The attorney-general is a necessary party because the trusts mentioned are public ones for charitable purposes, and the attorney-general representing the public, is charged with the duty of caring for and protecting the same. The general practice has been for the attorney-general to file the bill either of his own motion or on the relation of some party interested, but where the interested parties present the bill and make the attorney-general a defendant, the proper parties are before the court, and it is immaterial that the attorney-general is defendant instead of complainant. *Lanning* v. *Commissioners of Public Instruction, 63 N. J. Eq. 1* (at *p. 8*)."

Suffice it that the parties and issues were properly before the court.

Lastly, had the trust failed for want of beneficiaries, the creditors of the school could not benefit from the donors' money placed in trust and limited to the use of the income for the use of a school that became insolvent and hence could not function. Had there been no cognate purpose the fund must have reverted to the original settlers. The creditors show no right in law or equity to such trust fund.

The question of the legality of the voting rights reserved to Mr. Crane and his son is not before us.

As before indicated, it seems that there was a charitable trust in both the Crane stock and in the other donations given and received for the endowment fund. Since it has become impracticable to execute the terms of the trust, since the school has become insolvent, the income from the fund accruing since that event should be devoted to a cognate purpose. There was quite properly found to be such a purpose—the new school organized by Alumni.

The decree appealed from, modified not inconsistently with this opinion, is affirmed.

*For affirmance*—WELLS, J.   1.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WOLFS-KEIL, RAFFERTY, COLE, JJ.   12.

Appeal of Arthur G. Baker—

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ.   13.

*For reversal*—None.