Complainant is the corporate trustee of a fund of $5,000, bequeathed by Mary W. Lippincott, deceased, for a charitable purpose. Complainant represents that the moneys bequeathed were received by it May 2d 1938, but that, by reason of subsequent changes in circumstances, it has become impossible to carry out the particular testamentary direction of the donor. It seeks advice, suggests application of the cy pres doctrine and advances a plan for the consideration of the court. The defendants are the Attorney-General, the executor-trustee of the donor's estate and individuals, the beneficiaries of another testamentary trust created by the donor for the disposition of her residuary estate.
The Attorney-General and two of the individual defendants failed to answer, and a decree pro confesso was entered against them. The executor-trustee denies the applicability of the cypres rule and, with the remaining defendants, asserts that the charitable bequest has lapsed, a reverter has occurred, and *Page 129 
the fund with its increment should be paid over to the executor-trustee to become a part of the donor's residuary estate.
The ninth paragraph of the donor's will reads:
"Ninth: I give and bequeath to the Memorial Library of Cinnaminson, New Jersey, the sum of Five thousand Dollars, to be paid to the Treasurer of the said Library, and to be used toward the construction of a library building, provided, however, that this legacy shall abate and be deemed revoked if I shall have given the said sum of Five thousand Dollars to the said Library in my lifetime."
When Mary W. Lippincott executed her will there was no "Memorial Library of Cinnaminson, New Jersey," in existence, and no such library has since come to exist. However, there can be no possible doubt of the intent of the testatrix when she formulated or adopted this descriptive term. It aptly identified a project to build and maintain a free public library and reading room at Cinnaminson, conceived and activated by Susan W. Lippincott, deceased, Mary's aunt. Christian v. Catholic Church, c.
(Court of Chancery), 91 N.J. Eq. 374; 110 Atl. Rep. 579. This charitable project was declared in Susan's will and, although she did not suggest that it be considered a memorial to her, it would inevitably memorialize her public spirit and generosity. Mary was a direct beneficiary under her aunt's will and one of the persons nominated therein to set up and administer the library trust.
Susan W. Lippincott died March 20th, 1906. Shortly thereafter the trustees named in her will organized and received the bequest, about $20,000, from the executor of her estate; they invested and reinvested these moneys, purchased two village lots suitable as library sites, employed an architect, had plans for the building prepared and costs estimated; prosecuted a survey to ascertain the probable cost of furniture and furnishings, of books and periodicals, of future repairs and replacements; investigated the subject of salaries paid librarians and necessary assistants; and, as suggested in Susan's will, organized the complainant corporation and transferred to it all of the trust assets. Over the years, the trust fund grew until it approximated $50,000. In all of the trust activities Mary W. Lippincott was an interested and *Page 130 
active participant; while so interested and occupied, she made her will.
After the death of Mary W. Lippincott, the officers and directors of the complainant corporation completed their surveys and decided that it would be impracticable, if not impossible, to erect a suitable building on either of its lots, furnish and equip it, purchase and install books, staff the library and maintain it. They adopted a formal resolution to that effect and filed a bill in this court. The matter was here fully explored, the judgment of complainant's officers and directors was approved, and the cy pres doctrine was applied. The decree entered substituted First Camden National Bank and Trust Company for the complainant as trustee and directed it, from time to time, to pay one-half of the net income to The Riverton Free Library Association and the other half to the Moorestown Free Library Association, which libraries serve residents of the Cinnaminson area. It was stipulated that all books purchased with such income were to be of the character specified in the will of Susan W. Lippincott, and bear a suitably inscribed book-plate, recording her gift.
After entry of the decree, complainant sold and conveyed the land it had purchased and paid over the proceeds to the substituted trustee. Complainant now holds only the moneys it received from the estate of Mary W. Lippincott which, at the time the bill was filed herein, aggregated $5,051.67. It wishes to be relieved of its trust and suggests that the bank aforesaid be substituted as trustee, that it be instructed to invest and reinvest these trust moneys and to pay over the net income therefrom to said two libraries for the purchase and circulation of books, which books shall bear a book-plate commemorating the gift of Mary W. Lippincott.
The bequest with which we are concerned unquestionably created a public or charitable trust. Jones v. Watford (Court ofChancery), 62 N.J. Eq. 339; 50 Atl. Rep. 180; Noice v.Schnell (Court of Errors and Appeals), 101 N.J. Eq. 252;137 Atl. Rep. 582. And, it must be found as a fact that a change in circumstances since the complainant accepted the trust has made it impossible of execution in the particular mode proposed by the donor. This situation suggests application *Page 131 
of the cy pres doctrine for "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." Restatement of theLaw, Trusts, § 399. Vide: Magie v. German, c., Church, 13 N.J. Eq. 77;
affirmed, 15 N.J. Eq. 500; Mills v. Davison (Courtof Errors and Appeals), 54 N.J. Eq. 659; 35 Atl. Rep. 1072;MacKenzie v. Trustees of Presbytery, c. (Court of Errors andAppeals), 67 N.J. Eq. 652; 61 Atl. Rep. 1027; Noice v.Schnell, supra; Cuthbert v. McNeill, 103 N.J. Eq. 184;142 Atl. Rep. 667; affirmed, 104 N.J. Eq. 495; 146 Atl. Rep. 881;Crane v. Morristown School Foundation (Court of Errors andAppeals), 120 N.J. Eq. 583; 187 Atl. Rep. 632.
Now, in our search for a more general intention of the donor to devote her bequest of money to charitable purposes, we should bear in mind the well established and oft quoted admonition that "in all matters of construction courts are bound to lean in favor of charity rather than against it." Hesketh v. Murphy (Courtof Errors and Appeals), 36 N.J. Eq. 304, 309. "And, indeed, so far has this legal favoritism been carried that it has been for ages the settled rule in the English law, and has been in this country often regarded as the true principle, that when a gift has been placed in the hands of a trustee to promote a charity, and which, from the mutation of circumstances, had become incapable of fulfillment, such gift was to be applied by the courts, exercising a purely judicial authority, to some cognate object, on the ground that it was the presumed intent of the testator that the fund so set apart as a benefaction should not, in any event, return to his estate." Ibid. Vide: Magie v.German, c., Church, supra; Brown v. Condit (Court ofChancery), 70 N.J. Eq. 440; 61 Atl. Rep. 1055; Y.M.C.A. v.Appleby (Court of Chancery), 97 N.J. Eq. 95;127 Atl. Rep. 25; affirmed, 98 N.J. Eq. 704; 130 Atl. Rep. 921, where Vice-Chancellor *Page 132 
Foster said: "* * * it is the duty of the court to do everything in its power to discover his intentions [charitable] and to see that they are carried into effect, if possible." Vide: Magie v.German, c., Church, supra; Mills v. Davison, supra;MacKenzie v. Trustees of Presbytery, c., supra; Noice v.Schnell, supra; Cuthbert v. McNeill, supra; Crane v.Morristown School Foundation, supra.
While it is true that Mary W. Lippincott made her bequest to the "Memorial Library of Cinnaminson, New Jersey," she directed that it be paid "to the Treasurer of the said Library." The treasurer of the Cinnaminson library project was the treasurer of the complainant corporation; for the corporation, he had received the trust funds bequeathed by her aunt. Mary's bequest was, in actuality, a contribution to her aunt's charity; it was to be used, she said, "toward" the construction of the library building. She added that the legacy should "abate and be deemed revoked" if she had given $5,000 "to the said Library" in her lifetime. Here she did not say to the building of the library building, but "to the library." Can there be any reasonable doubt that the testatrix had in mind not only the special mode of application for her contribution she indicated, but a more general charitable purpose? I believe not.
In a judicial inquiry, prosecuted to ascertain, if possible, the general purpose of the creator of or a contributor to a charitable trust, it is proper and helpful to look to the purpose prompting the creation of the association or corporation designated the beneficiary or the trustee of the gift. Thus, inMills v. Davison, supra, our Court of Errors and Appeals, to ascertain the intent of the donors, considered the object for which the corporate beneficiary was organized. In Crane v.Morristown School Foundation, supra, Mr. Justice Bodine, speaking for our highest court, quoted a resolution adopted by the trustees of a boys' academy to establish an endowment fund, and said: "There must arise a presumption that those subscribing thereto made their donation for the specific purpose declared." That purpose was "to provide a permanent endowment, the income from which was to be used for school purposes." Mr. Justice Bodine added: "An endowment fund *Page 133 
having been created, the income of which was alone to be used for specific purposes, it seems clear that those thereafter contributing thereto intended that their gift was for that use. The friends and graduates of the school making contributions in money or securities for an endowment fund then in existence undoubtedly contemplated that their money and securities would be permanently devoted to school purposes and this could only be done if the fund was kept separate and the income so used. The fact that contributions were solicited and received by the school for an endowment fund, the income of which was to be used for school purposes, and the fact that contributions when so received were placed in a separate fund, is indicative of the donor's intention that the gift was made for the purposes for which it was requested and used."
In the instant case, the testatrix was, of course, thoroughly familiar with the provisions of her aunt's will. She was not only named therein as a direct beneficiary, but thereby the trust was created and she was appointed a trustee. The provisions respecting the creation and perpetuation of the trust are lengthy and will not be quoted here, but it must be said that the building to be erected was to be "of artistic design for a Library and Reading Room;" both a library and a reading room were to be provided and maintained; the trustees (or the corporate trustee) were "to encourage such other educational interests and purposes as in the judgment of the said Trustees shall be wise and needful;" income not needed for maintenance of the library and reading room was to be used for "the support of the other educational interests and purposes aforesaid;" and, the trustees were to be self-perpetuating.
Mary W. Lippincott was one of the incorporators of the complainant corporation, and for 27 years was one of its officers and directors. Complainant's certificate of incorporation discloses the purpose it was designed to serve: "Second: — The purpose for which the corporation is formed is to establish, maintain, support, manage, and carry on a Library and Reading Room, and to encourage such other educational interests and purposes as in the judgment of the Trustees of the corporation shall be wise and needful, in pursuance of the *Page 134 
provisions of the last will and testament of Susan W. Lippincott, deceased, duly proved before the Surrogate of the County of Burlington, at Mount Holly, New Jersey, and recorded in said Surrogate's office in Book 31 of Wills, page 448, and subject to the Trusts therein set out and declared."
It seems probable that the Cinnaminson library project was conceived by Susan W. Lippincott as a result of her trusteeship for a fund of $2,300, "profits which resulted from Cinnaminson Courses of Lectures delivered in Moorestown, N.J." In her will she dedicated these funds to "the support and maintenance of the Library and Reading Room," before making her personal charitable bequest. Who shall say that this example of Susan's honor and sense of responsibility did not prompt Mary to so bequeath the moneys she had received from her aunt as to add them again to her aunt's moneys given to charity?
A significant feature of the ninth paragraph of Mary W. Lippincott's will is the provision for revocation. Testatrix conceived of and provided for an abatement — but only if she had given $5,000 "to the said Library" in her lifetime. Otherwise, her gift was to be final and absolute. It was to be paid over to a trustee in being, and applied to the general charitable purposes expressed in Susan's will and the certificate of incorporation of the trustee. That such was the general intent and purpose of the testatrix, I have no doubt, and I so find. This conclusion of fact warrants the application of the cy pres
doctrine and rejects the claim of the heirs-at-law and next of kin of the donor.
In passing, it should be noted that the charitable bequest in question took effect. It was paid over to the complainant, perpetual trustee for the public, and at a time when it seemed possible the trust could be executed in the specific manner suggested by the donor. Vice-Chancellor Leaming, in Cuthbert v.McNeill, supra, quoted and adopted the following statement fromZollman, American Charities, § 307: "`When a valid charitable trust has been created without a provision for a reversion, it raises an implied condition against a reverter, permanently excludes the interests of the heirs and next of kin * * * and does not leave them as such a *Page 135 
"scintilla of right."'" Vice-Chancellor Leaming added: "The conclusion seems irresistible that this charitable trust having taken effect initially with no limitation of time for its accomplishment and no provision for reverter, and its performance in the particular manner directed having become impracticable by changing conditions which have occurred since the creation of the trust, no reverter can be said to have arisen in favor of the heirs-at-law of the donor."
The complainant will be relieved of its trust, as requested. Jay Knox, the trust officer of First Camden National Bank and Trust Company has been an officer and director of the complainant for many years and, for more than thirty-five years, the funds of the library trust have been deposited with his bank and investments have been supervised by it. First Camden National Bank and Trust Company, of Camden, New Jersey, will be appointed trustee and instructed to invest and reinvest the funds of this trust and, from time to time, to pay over one-half of the net income to The Riverton Free Library Association, and the other half to the Moorestown Free Library Association, for the purchase and circulation of books of the type and character stipulated in the will of Susan W. Lippincott. In all books so purchased there shall be placed a suitably inscribed book-plate memorializing the trust of Susan W. Lippincott and the contribution thereto of Mary W. Lippincott. *Page 136