[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 459 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 460 
This suit is brought by the executors and trustees of the will of Clara Vanderhoven for instructions and the construction of her will. Clara Vanderhoven died, a spinster, in her 96th year, in the year 1946 leaving a last will and testament admitted to probate on May 15, 1946. By her will testatrix gave the residue and remainder of her entire estate to plaintiffs in trust for the following uses and purposes, among others:
"b: From the principal of the trust fund to erect on lands in said Hazelwood Cemetery, if sufficient lands in said Cemetery can be acquired therefor, otherwise on lands adjacent thereto, a Chapel — in memory of my father, James Vanderhoven, my mother, Mary Vanderhoven, my brother, Ross Vanderhoven and myself — to be used, without distinction as to creed, for mortuary and memorial services for persons buried in said Cemetery or any other Cemeteries or burying grounds *Page 461 
in the vicinity thereof; and to expend for the erection of said Chapel not less than the sum of One Hundred Thousand Dollars nor more than the sum of Two Hundred Thousand Dollars. Such Chapel to be built of granite and in Gothic style and to have a seating capacity of seventy-five to one hundred and twenty-five.
"c: To invest and reinvest the balance of the trust fund in such securities as are legal investments for Savings Banks in the State of New Jersey and collect the income therefrom.
"d: To use so much of the net income as may be necessary for the care and preservation of such Chapel, including the salary of a caretaker and the heating of such building when necessary.
"e: Should the income from the funds of the Hazelwood Cemetery Association, in the judgment of my trustees or the survivors or survivor of them, be insufficient to properly care for said Cemetery, then to use so much of the balance of the net income for that purpose as my said trustees may deem necessary.
"f: To pay, semi-annually, so much of the balance of the net income from the trust fund to the Rahway Hospital, at Rahway, New Jersey (by whatever name said Hospital may be known) if and when a new Hospital shall have been erected, as may be necessary to defray any deficiency in the general operating expenses of such Hospital. Interest on debts or obligations of said Hospital shall not be construed as general operating expenses.
"g: To add any surplus income there may be to the principal of the trust fund."
Plaintiffs filed their first account, which account was allowed by decree of the Prerogative Court on June 3, 1948, and which account shows the balance of the estate consisting of securities and cash in the amount of $1,270,934.87 corpus and $31,888.79 income as of December 31, 1947.
Testatrix executed her will on August 8, 1924. She left neither father, mother, brother nor sister surviving her. Her nearest next of kin were two cousins who are party defendants to this suit and many distant relatives who are likewise parties herein. Her only brother, Ross Vanderhoven, died in 1921. He had been for twenty-one years prior to his death a trustee of The Hazel Wood Cemetery, and secretary and treasurer from 1876 until the date of his death. The testatrix' parents and brother are buried in the Vanderhoven plot in The Hazel Wood Cemetery. The Hazel Wood Cemetery was organized September 30, 1859, pursuant to the provisions of the Rural Cemetery Associations, P.L. 1851, p.
254.
The testatrix and her brother, Ross Vanderhoven, were both *Page 462 
unmarried, and during all the period of her brother's services as secretary and treasurer of the cemetery they occupied the same house in Rahway as their home, and testatrix remained there after her brother's death and until her own demise. Testatrix was undoubtedly fully conversant with her brother's activities with respect to the cemetery and of the affairs of the cemetery. Under her brother's will she received over $400,000 which, under her own will, is largely devoted to the cemetery's use. She was a frequent visitor to the cemetery and made a practice of spending hours at a time there and was interested in its beautification and development.
The Vanderhoven family plot adjoins a plot conveyed to the City of Rahway for soldiers' burials.
The issues here involved will be discussed in the order of their statement in the pretrial order:
1. "Is the bequest of $100,000 to $200,000 for the erection of a chapel in memory of testatrix' father, mother, brother and herself, a charitable bequest?"
In construing a last will, the true intention of the testator, to be gathered from the whole will, must be given effect, and it ought not to be so construed as to impute to the testator a purpose to die intestate or partially so if it can be avoided, the law preferring a construction that will prevent, rather than one which will permit, intestacy. Bruce v. Bruce, 90 N.J. Eq. 573, 107 A. 434 (E. A. 1919).
This bequest is two-fold in character. First, it is for the erection of a memorial to testatrix' father, mother, brother and herself. A trust for such a purpose is valid because "a testator has a right to provide for such things by his will, and the exercise of the right cannot be denied or abridged by the consideration of the appropriateness of the provision, whether in view of the amount of his property or his station in life."Detwiller v. Hartman, 37 N.J. Eq. 347.
Second, this bequest is for a charitable use. It is for the erection of "A Chapel * * * to be used, without distinction as to creed, for mortuary and memorial services for persons buried in said Cemetery or in any other Cemeteries or burying grounds in the vicinity thereof." That such *Page 463 
a testamentary gift is charitable is abundantly shown by numerous decisions of our own courts, among which may be cited MacKenziev. Trustees, 67 N.J. Eq. 652, 665, 61 A. 1027 (E. A.
1905); Noice v. Schnell, 101 N.J. Eq. 252, 137 A. 582 (E. A. 1927); George v. Braddock, 45 N.J. Eq. 757, 18 A. 881 (E. A. 1889); Vineland Trust Co. v. Westendorf,86 N.J. Eq. 343, 98 A. 314; affirmed, 87 N.J. Eq. 675, 103 A. 1054; Crane v. Morristown School Foundation, 120 N.J. Eq. 583, 187 A. 632 (E. A. 1936); Woodstown Natl. Bank, etc.,Co. v. Snelbaker, 136 N.J. Eq. 62, 40 A.2d 222; affirmed,137 N.J. Eq. 256, 44 A.2d 210.
The latest expression of the courts of our State is contained in the opinion of Mr. Justice Heher speaking for our present Supreme Court in Wilber v. Owens, 2 N.J. 167, affirming the Court of Chancery, Wilber v. Asbury Park National Bank TrustCo., 142 N.J. Eq. 99.
"A trust is charitable if the subject property is devoted to the accomplishment of purposes which are beneficial or may be supposed to be beneficial to the community. This is the prime distinction between private trusts and charitable trusts. The question is whether the accomplishment of the purpose is of such social interest to the community as to justify the dedication of the property to that purpose in perpetuity. Are the persons to benefit of a sufficiently large or indefinite class to give rise to community interest in the trust? Will the trust in operation advance the religious, educational, eleemosynary, governmental or other charitable interests of the community?
"If the general purposes for which the trust is created may reasonably be regarded as in the interest of the community, the mere fact that the members of the court and the vast majority of the people believe that the particular purpose is unwise does not serve to render the trust non-charitable. Scott on Trusts,
374.7. In an Irish case, in which a trust to promote vegetarianism was upheld, Lord Justice Fitz Gibbon said that the test of beneficence is met if the `benefit' is `one which the founder believes to be of public advantage,' and `his belief' is `at least rational, and not contrary either to the general law of the land, or to the principles of morality.' He continued: `A gift of such a character, dictated by benevolence, believed to be beneficent, devoted to an appreciably important object, and neither contra bonos mores nor contra legem, will, in my opinion, be charitable in the eye of the law, is settled by decisions which bind us. It is not for us to say that these have gone too far.' In re Cranston (1898) 1 I.R. 431, 446-7." *Page 464 
The Hazel Wood Cemetery is divided into approximately 2,000 plots, with space for twelve graves each, or 24,000 burials, and about 3,000 interments have already been made, so that it can be seen that the persons to benefit by the erection and maintenance of this chapel constitute a "large or indefinite class" even though confined to the burials in The Hazel Wood Cemetery.
"And it is to be remembered that it is the acknowledged doctrine that in all matters of construction courts are bound to lean in favor of charity rather than against it." Hesketh v.Murphy, 36 N.J. Eq. 304 (E. A. 1882).
And the rule against perpetuities does not apply to charitable gifts. Mills v. Davison, 54 N.J. Eq. 659, 662, 35 A. 1072;MacKenzie v. Trustees, supra; Gallagher v. Venturini,124 N.J. Eq. 538, 3 A.2d 157; Moore's Executor v. Moore,50 N.J. Eq. 554, 25 A. 403; Y.M.C.A. v. Appleby, 97 N.J. Eq. 95, 127 A. 25; affirmed, 98 N.J. Eq. 704, 130 A. 921.
2. "Is the bequest as contained in subdivisions c and d of said (`Third') paragraph a valid charitable bequest?"
This provision of the will is attacked by the next of kin on the ground that it is void under the rule against perpetuities, constitutes an unlawful restraint of alienation and is contrary to the public policy of this State.
As already stated the trust here involved is charitable and the rule against perpetuities does not apply to charitable trusts. Moreover, it would seem anomalous and unreasonable if the bequest for the building of the chapel could be held to be for a charitable purpose and the direction for the maintenance of that charity be invalid.
3. "Is the bequest of the income from the trust fund for the proper care of the defendant cemetery, as contained in subdivision e, a valid charitable bequest?"
Here the trustees are authorized to use so much of the net income of the trust fund as they deem necessary for the proper care of The Hazel Wood Cemetery.
That expenditures are immediately necessary to put the cemetery in proper condition is evident from the reports of *Page 465 
the superintendent of the cemetery, the company's minutes, photographs of the cemetery and the testimony of competent witnesses all produced at the final hearing. Since the validity of this provision of the will depends upon the question as to whether The Hazel Wood Cemetery is a charity, it is well to point out that it would be difficult to find any cemetery in this State better qualified as a charity than The Hazel Wood Cemetery. The testimony shows it was organized to supply a public necessity. It has been in existence and struggling with its limited finances for 90 years without a cent of profit to its organizers, its trustees, officers or lot holders, to beautify, embellish, properly care for and maintain it for the benefit of its innumerable lot holders and the public in general, without discrimination as to race, color or creed. No trustee or officer, other than the secretary and treasurer of this cemetery, has ever received compensation for his services, and they received a mere pittance. What is more the trustees, individually, from the time of its organization down to the present time, as the needs of the association required, have, from purely philanthropic motives, advanced moneys out of their own pockets, both as loans and gifts, for the beautification, embellishment and upkeep of the cemetery grounds.
No better statement in support of the contention that The Hazel Wood Cemetery is a charity could be written by me than that contained in the opinion of Vice-Chancellor Sooy in WoodstownNatl. Bank Trust Co. v. Snelbaker, supra, which case is on all fours with the instant case. See, also, Parker v. Fidelity UnionTrust Co., 63 A.2d 902.
4. "Is the bequest as contained in subdivision f, a valid charitable bequest?"
It is deemed unnecessary to make any extended statement in support of the contention that the Rahway Hospital is a charity and that this bequest is for a charitable use. Nichols v. NewarkHospital, 71 N.J. Eq. 130, 63 A. 621; 30 Corpus Juris 462.
The Rahway Hospital was incorporated August 17, 1917, under the act entitled "An Act to Incorporate Associations *Page 466 
not for Pecuniary Profit," P.L. 1898, c. 181, and has continued to operate up to the present under its original certificate of incorporation. The officers of the hospital since its incorporation have served without compensation. The hospital is in every sense a nonprofit organization. Hospitalization with medical and surgical care is furnished to the indigent sick. The income of the hospital is supplemented by donations of money, food, furnishings and other material and campaigns to raise money by donations to make up financial deficits constantly occurring. Its service is essentially that of public charity.
5. "(a) Is the direction to add surplus income to the principal of the trust fund, as contained in subdivision g of said paragraph `Third,' valid?"
There can be no doubt but that the gift of the residue of testatrix' estate to her trustees vested immediately upon her death. It is in no sense contingent or conditional.
"The rules of the common law policy against the inalienability of property * * * govern accumulations for charity in all but a few cases covered by statute." 16 Va. Law Review 370. New Jersey has no statute affecting this rule.
Where there is an immediate vesting of a trust fund, for charitable purposes, a will is not void because it directs or permits accumulations for an unspecified period of time. Conwayv. Third Nat. Bank, etc., Camden, 118 N.J. Eq. 61,177 A. 113; affirmed, 119 N.J. Eq. 575, 182 A. 916. This decision should set at rest any question touching the validity of this direction for accumulations. See, also, Page on Wills, p. 676, § 1256, and Gray on Perpetuities (4th Ed.), p. 630, par.
678, where the text reads as follows: "Where there is an unconditional gift to charity, the gift will be regarded as immediate and good, although the particular mode of carrying out the charity which the donor has indicated is too remote. Consequently in such a case if a direction for accumulation is invalid the only result is that the income is immediately distributable in charity; the heirs or next of kin are not letin." (Italics mine.) And, at p. 633, par. 679: "If *Page 467 
the purpose of the trust cannot be carried out without accumulation for too long a period, the fund may be applied cypres." Citing Conway v. Third Natl. Bank Trust Co. of Camden,supra. See, also, Restatement, Trusts, par. 401, comment L,
which reads as follows: "In the absence of a statute otherwise providing, a direction to accumulate the income of property held upon a charitable trust is valid, although the period of accumulation is longer than the period of the rule against perpetuities." And in 3 Scott on Trusts, § 401.9, p. 2142, the text reads as follows:
"Where property is given upon an unconditional trust for charitable purposes but it is provided that the income shall be accumulated for a certain time, the American courts have generally held that the provision for accumulation is binding unless under all the circumstances the period of accumulation is unreasonably long. The fact that the period is longer than lives in being and twenty-one years does not necessarily invalidate the provision.
"If there is an unconditional gift for charitable purposes, the gift does not fail although it is provided by the terms of the trust that the income shall be accumulated for a period longer than that of the rule against perpetuities. If the direction for accumulation is valid, it will be enforced. If the provision for accumulation is invalid, it will be disregarded and the court will direct the immediate application of the property to the designated charitable purposes. This is in accordance with the general principle underlying the cy pres doctrine, * * *."
See, also, 41 Am. Jur., p. 93, § 48; 48 C.J. 990, § 80.
In the light of these authorities it must be concluded that the direction for accumulation here is valid. If some time in the future the accumulations should appear to a court of competent jurisdiction to be unreasonable, the accumulations might be ordered distributed to the named beneficiaries immediately or cypres. But to paraphrase the language of Mr. Justice Heher inConway v. Third Natl. Bank Trust Co. of Camden, supra, "There is no present necessity for determining this question; it may be settled when it arises, if it ever does arise." In any event "the heirs or next of kin are not let in." Gray on Perpetuities,supra, par. 678.
"(b) Does the rule against perpetuities or any other rule of law of this State render the gifts or any of them comprised in paragraph `Third,' subdivisions b to g inclusive, invalid?" *Page 468 
This question has already been discussed with respect to all of the gifts here involved.
"(c) Are the gifts in paragraph `Third,' subdivision b to e inclusive, so inter-related that all must be valid for any of them to be valid?"
No occasion is perceived for discussing the question of the inter-relation, although in my judgment all of the gifts are independent but if one failed such failure would not affect the validity of the other gifts. What I have heretofore said in discussing other issues and in support of the questioned bequests considered, applies with equal force to this issue.
"(d) If the gift given by paragraph `Third,' subdivision b, is valid must the trustees acquire title to the lands upon which the chapel is to be constructed, and if so, does the defendant The Hazel Wood Cemetery have the power to convey a marketable title in the absence of a monetary consideration to it?"
There is an implied, if not an express, direction to the trustees to acquire title to the lands upon which the chapel is to be constructed. The language is "if sufficient lands in said cemetery can be acquired therefor." By what other means than by taking title thereto such acquisition could be accomplished, I do not know; but the question is idle since The Hazel Wood Cemetery has already agreed to convey a certain plot, designated on the map, which has been set aside for that purpose. Whether or not a marketable title can be conveyed to the trustees, it seems to me, is of no moment, as the lands are already dedicated to cemetery purposes and the trust is a perpetual one. A conveyance by the cemetery to the trustees would be subject to the dedicated use and there would be no occasion for the trustees to convey a marketable title. However, if such a marketable title depends upon the consideration passing to the cemetery company for the conveyance, the expenditure of from $100,000 to $200,000 on improving and embellishing a portion of the cemetery company's property, and the resultant benefits accruing to the cemetery and its lot owners, who are members of the association, from the erection and maintenance of the chapel, is a *Page 469 
sufficient consideration whether it be called "monetary" or otherwise.
"(e) If any or all of the gifts are invalid, does the doctrine of cy pres apply?"
That the testatrix' will evinces a general charitable intent sufficiently appears from the mere reading thereof. Almost her entire estate is disposed of for charitable purposes, and what better evidence of a general charitable intent could be required? As to the application of the cy pres doctrine, the opinion of the Court of Chancery in Wilber v. Asbury Park National Bank Trust Co., supra, and the opinion of Mr. Justice Heher, speaking for the present Supreme Court in the same case on appeal, sufficiently expound the application of the doctrine of cy pres
and, under the rules there laid down, in the event of failure of any of these bequests the cy pres doctrine can be applied.
Present judgment in accordance with the foregoing.