18 N.J. Super. 101 (1952)
86 A.2d 601
ISABELLE LITCHER, PLAINTIFF,
v.
THE TRUST COMPANY OF NEW JERSEY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 19, 1952.
*103 Messrs. Wolf & Baumann, attorneys for plaintiff.
Mr. Emil W.A. Schumann, attorney for defendant Trust Company of New Jersey and Emil W.A. Schumann, executor.
Mr. Frederick J. Gassert, attorney for defendant Martin W. Stanton, director, &c.
Mr. James P. Mylod, attorney for defendant Monsignor John L. McNulty, as President of Seton Hall College.
Messrs. O'Mara, Conway & Schumann, attorneys for defendant Rev. Lawrence J. McGinley, as President of Fordham University.
Mr. Maurice C. Brigadier, attorney for defendant-counterclaimant Michael LaPadula.
GRIMSHAW, J.S.C.
In this action the plaintiff seeks a judgment declaring void the nineteenth and twentieth paragraphs of the will of Thomas J. Kavanagh, deceased. Also sought is a judgment determining the proportionate shares of the residuary principal and income of the estate to which the several parties will be entitled in the event that the residuary provision of the will is held to be invalid.
Kavanagh died on February 23, 1938, unmarried and without issue. His will was admitted to probate by the *104 Prerogative Court on March 28, 1938. The New Jersey Title Guarantee & Trust Company was named as executor and trustee. On June 9, 1939, that bank was taken over by the then Department of Banking and Insurance, and the defendant Trust Company of New Jersey was appointed substituted trustee.
The decedent left him surviving a brother, Harry W. Kavanagh, and three sisters, Isabella T. Kavanagh LaPadula, wife of the defendant Michael LaPadula, Emily E. Kavanagh and Anna Matilda Kavanagh Menzer, also a defendant. Henry W. Kavanagh died in 1942, intestate, unmarried and without issue. Isabella T. Kavanagh LaPadula died in 1948, intestate, without issue, and survived by her husband, Michael LaPadula, and her two sisters, Emily E. Kavanagh and Anna Matilda Kavanagh Menzer. Emily E. Kavanagh died in 1949, unmarried, leaving a will under the terms of which the major portion of her estate was left to her niece, Isabelle Litcher, the plaintiff in this action, who is the wife of Steven John Litcher. Anna Matilda Kavanagh Menzer is still living.
The paragraphs of the will with which we are concerned are as follows:

"Tenth

After all the above named legacies have been paid and settled, I give and bequeath all of the balance, residue and remainder of my estate, to my Executors and Trustees or both, to have and to hold the same in trust for the following uses and purposes,

Eleventh
Out of the Income of my estate, I order that the sum of One hundred (100) Dollars per month, be paid unto my father, either monthly or quarterly as he may decide, during his lifetime, for him to use as he may decide for his personal pleasure and comforts.

Twelfth
To my sister Mrs. Michael LaPadula (Isabella T. Kavanagh) as she now being married and provided for, I bequeath the sum of Nine hundred (900) Dollars per year, not to exceed Twenty Years, for her personal use and comfort.

Thirteenth
To my sister Mrs. William Menzer (Anna Matilda Kavanagh) being that she is married and provided for, I bequeath the sum of *105 Nine hundred (900) Dollars per year, for a period not to exceed Twenty years for her personal use and comfort.

Fourteenth
To my sister Emily E. Kavanagh I order and bequeath, that the sum of Fifteen hundred (1500) Dollars a year be paid to her during her life, provided she does not marry, if she does then her share is to be identical in every respect from the date of her marriage, as her other two sisters mentioned in paragraphs Twelve and thirteenth, and in order that is is clearly understood, the years before marriage are to be deducted from the twenty years, in other words, if she has been receiving her yearly equity for 5 yrs before her marriage, the sum of Nine hundred (900) Dollars commences then & runs for only 15 yrs longer, as I feel I must be fair, just and honest to them all.

Fifteenth
To my brother. Harry W. Kavanagh I order & bequeath that the sum of Twelve hundred (1200) Dollars per year be paid to him in quarterly payments, for a period not to exceed twenty years, for him to use for his personal comfort and pleasure as he himself may decide.

Sixteenth
In making all of the above bequests and legacies, I do so with the best interest at heart toward all, and after a careful study, planning, and reviewing, and without any less feeling of love and devotion toward one more than another. By limiting the time it remains in force, I feel that they are all well fixed in life, and this money set aside by them yearly and invested will be and provide for them later in life, unless through some unforseen circumstances, they may be compelled to use it yearly.

Seventeenth
Should any one of the beneficiaries mentioned herein, be dissatisfied, and contest the validity of this Last Will and Testament, at any time, then and in that case, the one or ones so doing, are to forfeit his, hers, or their share and bequest, under this Will, and his, hers, or their bequest, reverts back and becomes part of my residuary estate, as follows later in this document.

Eighteenth
In the event of the death of any beneficiary herein named, any bequest made to that beneficiary, his, hers, or their share, reverts back to my estate

Nineteenth
When all payments bequests legacies and etc have been finally paid and no further payments are to be made under the terms of this will as mentioned in the previous sections, then what principal remains of the entire estate, I order that same be divided according to method outlined herewith and following, that is

Twentieth
A committee of not more than seven (7) nor less than Five (5) be selected and appointed, two of whom if living to be my brother *106 or sisters, one the President of Seton Hall College, (R.C) South Orange New Jersey, one the President of Fordham University (R.C) Fordham N.Y., balance selected by executors or trustees, and this committee is to divide the principal as follows,
1st Endow a Chair of Public Speaking and to be free to students, and to be known as Thomas J. Kavanagh Chair of Public Speaking, or name that conveys the same meaning.
2nd Set aside a sufficient fund to pay for and educate a young man for the priesthood
3rd Donate One thousand (1000) for the Roman Catholic missions
4th Set aside a fund to educate one young man in college free, same to be given to a worthy young man who has the ambition, but whose parents cannot afford to pay his way through, when one graduates another can be started on his college course, and to be known as The Thomas J. Kavanagh Scholarship
5th Any balance still remaining and not set aside for any direct purpose, is to be used to help the poor and unfortunates and relieve or help relieve those in poverty or distress and provide them with as much of the comforts of life as is possible, but must not be used for gain or profits as it is my intention & desire, that all I have had of this worlds goods in comfort and pleasure, were given me by God Almighty only as a trust, to be returned back and to help those who in this life have not been so blessed as I."
Plaintiff questions the power of the substituted trustee to appoint the committee provided for in the twentieth paragraph of the will. That it may do so I do not think is open to question. A successor trustee can properly exercise the powers conferred by the terms of the trust even though they involve the exercise of discretion, unless the testator manifested an intention that the power should be exercised only by the trustee originally named by him. Levin v. Attorney-General, 136 N.J. Eq. 568 (Ch. 1945); Mirinda v. King, 11 N.J. Super. 165 (App. Div. 1951). No intention on the part of the testator to restrict to the original trustee the power to appoint the committee provided for in paragraph 20 of the will is discernible in the instrument under consideration. Therefore, the substituted trustee may validly make the appointment. N.J.S. 3A:6-51.
Next for consideration is the nature of the disposition of his residuary estate made by Mr. Kavanagh. Can it be held to be a gift for charitable purposes? In the consideration *107 of this question there are some general rules which must be borne in mind. They have been stated to be as follows:
"The first is that a court's attitude in the consideration of a bequest intended for a charitable purpose should be in favor of the charity rather than against it. The court should take a friendly, not a hostile, attitude toward the gift. It should be the aim of the court to execute the testator's intent by sustaining the trust, rather than to overthrow it, if it can be sustained without violating well-recognized and established principles of the law. No better statement of the attitude a court should assume in dealing with this question can be found than that given by Chief-Justice Beasley in the case of Hesketh v. Murphy, 36 N.J. Eq. 304. In this case he said:
`And it is to be remembered that it is the acknowledged doctrine that in all matters of construction courts are bound to lean in favor of charity rather than against it. And, indeed, so far has this legal favoritism been carried that it has been for ages the settled rule in the English law, and has been in this country often regarded as the true principle, that when a gift has been placed in the hands of a trustee to promote a charity, and which from the mutation of circumstances, had become incapable of fulfillment, such gift was to be applied by the courts, exercising a purely judicial authority, to some cognate object, on the ground that it was the presumed intention of the testator that the fund so set apart as a benefaction should not, in any event, return to his estate.'" Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. 1927).
In the same case, the court said, in discussing the meaning of the word "charity":
"From the wealth of decisions on this subject there are some outstanding cases which contain definitions of a public charity to which reference is frequently made. The definition of a public charity given by Horace Binney in his argument before the United States Supreme Court in the Girard Will Case and adopted by the court (Vidal v. Girard, 43 U.S. 127; 11 L.Ed. 205), is one of the most striking. It is as follows:
`Whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense  given from these motives and to these ends  free from the stain or taint of every consideration that is personal, private or selfish.'
In the able opinion in this court of the late Judge Green, in MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652, he approves the definition given by the eminent Massachusetts jurist, Justice Horace Gray, in Jackson v. Phillips et al., 96 Mass. 539, which is as follows:
`"A charity, in its legal sense, may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an *108 indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described as to show that it is charitable in its nature."'
Of the text-writers, Perry gives a comprehensive definition of a charitable trust in these words:
`Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted, and all gifts for the public convenience, benefit, utility or ornament, in whatever manner the donors desire to have them applied.' 2 Perry Trusts (5th ed.) 314.'
Of the shorter definitions Lord Camden's definition in Jones v. Williams, Ambler, 651, is striking. He defines a charitable trust as, `A gift to the general public use which extends to the poor as well as to the rich.'
Another condensed definition is that of Mr. Justice Swain in Ould v. Washington Hospital, 95 U.S. 303, 311, which is given in these words: `A charitable use where neither law or public policy forbids may be applied to almost anything that tends to promote the well-doing and well-being of social man.'"
It is clear from the most casual reading of the testator's will that his intention was to give the residue of his estate to charity. As he expressed it, "It is my intention & desire, that all I have had of this worlds goods in comfort and pleasure, were given me by God Almighty only as a trust, to be returned back and to help those who in this life have not been so blessed as I." It would be difficult to find a clearer expression of what the testator had in mind.
The testator directed that the residue of his estate should be used to endow a chair of public speaking; educate a young man for the priesthood; provide $1,000 for Roman Catholic Missions; provide a college scholarship for a young man whose parents are unable to pay for his education. The balance, if any, is to be used to relieve the poor and unfortunate. All of these objects come within the definition of charity as quoted above. And granting a measure of indefiniteness in the testamentary provisions, no obstacle to the *109 fulfillment of the testator's intention is presented thereby. Vagueness is to be found in every charitable trust. If, however, the intention be charity, the court will execute it, however vaguely the testator may have indicated his purpose. Noice v. Schnell, supra.
It having been established that testator's disposition of his residuary estate is a gift for charitable purposes, there remains for consideration whether the proposed method of distribution violates the rule against perpetuities. That rule requires that all interests must vest, if at all, within a term measured by the life or lives of a person or persons in being at the time of the creation of the interest and 21 years thereafter. Gray, Perpetuities (4th ed.) 201; McGill v. Trust Co. of N.J., 94 N.J. Eq. 657 (Ch. 1923), affirmed 96 N.J. Eq. 331 (E. & A. 1924).
Under the tenth paragraph of the will the entire residue of the estate remaining after the payment of debts and specific legacies was given to the trustee to hold in trust and from the income to make the following payments:
Under the eleventh paragraph, an income of $100 per month for life was to be paid to testator's father. His father predeceased the testator.
Under the twelfth paragraph, testator's sister, Isabella T.K. LaPadula, was to receive $900 per year for a period not to exceed 20 years.
Under the thirteenth paragraph, testator's sister, Anna M.K. Menzer, was to receive $900 per year for a period not to exceed 20 years.
Under the fourteenth paragraph, testator's sister, Emily E. Kavanagh, was to receive a yearly income of $1,500 for life, with a proviso that if she should marry the yearly payments to her would be reduced to $900 and should continue only until the expiration of 20 years following the death of the testator.
And under the fifteenth paragraph, testator's brother was to receive $1,200 a year for a period not to exceed 20 years.
The testator then provides that the balance of his estate *110 remaining after the payment of the legacies for the benefit of his brother and sisters, shall be used for the charitable purposes referred to above. The instrumentalities which are to be used to carry out the testator's wishes and the amount they are each to receive, are to be determined by a committee of not more than seven or less than five members. On the committee are to be the presidents of Fordham University and Seton Hall College, two from among his brother and sisters, if living, and the balance to be selected by the trustee.
Arguing against the validity of the residuary bequest, plaintiff says that there are no measuring lives and, therefore, the interests of the ultimate beneficiaries must vest within 21 years after the testator's death. They contend, further, that the payment of all debts and legacies is a condition precedent to the appointment of the committee and the distribution of the residue. And, assuming that one of the annuities runs for the full period of 20 years, there is a possibility that the interests of the residuary beneficiaries will not vest within the 21 years period, with the result that the residuary disposition is void.
Assuming for the moment that there are no measuring lives and that the interests of the residuary beneficiaries must vest within 21 years after the death of the testator, I cannot agree that there is a violation of the rule against perpetuities. The plaintiff died on February 23, 1938. According to plaintiff's theory the interests must vest by February 23, 1959. I cannot find in the will any intention on the part of the testator that the selection of the committee and the designation of the beneficiaries is to await the payment of all debts and legacies. As I view the will, the trustee may appoint the committee at any time and that body may then proceed to designate the beneficiaries. Only the determination of the amount which each designee is to receive need await the payment of the debts and legacies. To the suggestion that the trustee might delay the appointment there is a ready answer. The power to appoint the *111 committee is a power coupled with a trust and equity would compel its exercise.
But in reaching the conclusion that there are no measuring lives, plaintiff has overlooked the intervening estates of the brother and sisters. Those interests have heretofore been the subject of consideration by the court. And by its decree dated April 10, 1940, the court adjudged the interests bequeathed to the brother and sisters to be annuities limited to the lives of the several legatees and not vested annuities for 20 years. It seems clear, therefore, that the vesting of the residuary interests must occur within 21 years following the termination of the estate of Anna M.K. Menzer, the sole surviving annuitant, whether that termination results from the death of Mrs. Menzer or the expiration of the 20-year period of the annuity. That the residuary interests will vest within that time is not open to doubt.
I am, therefore, of the opinion that the disposition of the residuary estate of the testator does not violate the rule against perpetuities.
The sole question still remaining for consideration is whether the testator died intestate as to such income as would remain after all bequests have been paid. I think not. The testator made clear his intention that all of his estate remaining after the termination of the prior estates should go to the objects of his charity as provided for in the twentieth paragraph of the will. Under such circumstances the surplus income becomes part of the corpus of the estate and passes under the residuary clause. Bye v. Strasbourg, 102 N.J. Eq. 300 (E. & A. 1927); Sandford v. Blake, 45 N.J. Eq. 248 (E. & A. 1889).
Judgment in accordance with the views expressed above.